No. 23-1812

In the United States Court of Appeals
for the Seventh Circuit

—————————————

MARY RODGERS-ROUZIER, ET AL.
*Plaintiffs-Appellants,*

v.

AMERICAN QUEEN STEAMBOAT OPERATING CO. AND HMS GLOBAL MARITIME, LLC
*Defendants-Appellees.*

—————————————

On Appeal from the United States District Court for the
Southern District of Indiana, New Albany Division
No. 4:20-cv-00004-SEB-KMB, Hon. Sarah Evans Barker

—————————————

**APPELLANTS' OPENING BRIEF**

—————————————

Leah M. Nicholls
   *Counsel of Record*
Matthew C. Clifford
PUBLIC JUSTICE
1620 L Street NW
Suite 630
Washington, DC 20036
Tel: (202) 797-8600
Fax: (202) 232-7203
lnicholls@publicjustice.net
mclifford@publicjustice.net

Douglas M. Werman
Maureen A. Salas
Sarah J. Arendt
WERMAN SALAS P.C.
77 West Washington Street
Suite 1402
Chicago, IL 60602
Tel: (312) 419-1008
Fax: (312) 419-1025
dwerman@flsalaw.com
msalas@flsalaw.com
sarendt@flsalaw.com

*Counsel for Appellants*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-1812

Short Caption: Rodgers-Rouzier v. American Queen Steamboat Operating Co.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]        **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
         Mary Rodgers-Rouzier and all Opt-In Plaintiffs identified in the notice of appeal and docketing statement

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
         Public Justice, Werman Salas P.C.

(3)     If the party, amicus or intervenor is a corporation:

         i)        Identify all its parent corporations, if any; and
                   N/A

         ii)       list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
                   N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
         N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
         N/A

Attorney's Signature: s/ Leah M. Nicholls                    Date: August 29, 2023

Attorney's Printed Name:  Leah M. Nicholls

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     **Yes** [✔]  **No** [ ]

Address:  1620 L Street NW, Suite 630

          Washington, DC 20036

Phone Number: (202) 797-8600                    Fax Number:  (202) 232-7203

E-Mail Address: LNicholls@publicjustice.net

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-1812

Short Caption: Mary Rodgers-Rouzier v. American Queen Steamboat Operating Company, LLC, et al

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> ☑   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 Mary Rodgers-Rouzier and all Opt-in Plaintiffs identified in the Notice of Appeal and the Docketing Statement.

_____

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 Werman Salas P.C., Public Justice

_____

(3)   If the party, amicus or intervenor is a corporation:

   i)   Identify all its parent corporations, if any; and

      N/A

   ii)   list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

      N/A

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

   N/A

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

   N/A

Attorney's Signature: _____   Date: August 28, 2023

Attorney's Printed Name: _____ Douglas M. Werman

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐  No ☑

Address:  Werman Salas P.C., 77 W. Washington St., Suite 1402 Chicago Il. 60602

_____

Phone Number: (312) 419- 1008                    Fax Number:  (312) 419-1025

E-Mail Address: dwerman@flsalaw.com

rev. 12/19 AK

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................iii

JURISDICTIONAL STATEMENT ............................................................. 1

STATEMENT ON ISSUES PRESENTED FOR REVIEW .......................... 3

STATEMENT OF THE CASE.................................................................... 4

SUMMARY OF ARGUMENT ................................................................... 7

STANDARD OF REVIEW....................................................................... 12

ARGUMENT .......................................................................................... 13

I.    AMERICAN QUEEN WAS BARRED FROM RAISING ITS STATE-
      LAW DEFENSE BY FEDERAL RULE OF CIVIL PROCEDURE
      12(G)(2). ...................................................................................... 13

II.   EVEN IF AMERICAN QUEEN'S MOTION TO COMPEL UNDER
      STATE LAW COULD BE CONSIDERED, RODGERS-ROUZIER
      CANNOT BE COMPELLED TO ARBITRATE HER CLAIMS...................... 17

      A.    The district court lacked authority to compel arbitration under
            Indiana law........................................................................ 17

            1.    Federal courts are not authorized to compel arbitration
                  under state law........................................................ 18

            2.    The IUAA, by its own terms, is limited to state-court
                  enforcement of arbitration agreements........................ 25

            3.    American Queen's employment agreement does not provide
                  for arbitration under Indiana law. ............................. 27

      B.    Even if the district court could compel arbitration under Indiana
            law, the terms of American Queen's arbitration agreement
            render it unenforceable. ...................................................... 30

            1.    The agreement's provision granting American Queen
                  unfettered discretion to select the forum, the arbitrator, and
                  the rules of arbitration renders the agreement
                  unenforceable. ......................................................... 30

            2.    The waiver of Rodgers-Rouzier's FLSA rights is invalid............. 35

i

      3.    The unenforceable provisions cannot be severed.........................39

III.    THE 127 OPT-IN PLAINTIFFS ARE PARTIES TO THIS LITIGATION, AND THIS COURT HAS JURISDICTION TO HOLD AS SUCH...................................................................................41

    A.    This Court has jurisdiction to decide whether the Opt-In Plaintiffs are parties. .............................................42

    B.    The Opt-In Plaintiffs are parties to this litigation under the plain text of the FLSA, and holding otherwise would make this Circuit an outlier. ..................................................45

CONCLUSION...................................................................53

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

CIRCUIT RULE 30(d) STATEMENT

SHORT APPENDIX

# TABLE OF AUTHORITIES

## CASES

*A.D. v. Credit One Bank, N.A.*,
885 F.3d 1054 (7th Cir. 2018) ................................................................. 12

*Al-Safin v. Circuit City Stores, Inc.*,
394 F.3d 1254 (9th Cir. 2005) ................................................................ 33

*Albright v. Edward D. Jones & Co.*,
571 N.E.2d 1329 (Ind. Ct. App. 1991)................................................... 27

*Ali v. City of Chicago*,
34 F.4th 594 (7th Cir. 2022)............................................................. 42, 44

*Alvarez v. City of Chicago*,
605 F.3d 445 (7th Cir. 2010) ................................................................. 52

*Angulo v. Levy Co.*,
568 F. Supp. 1209 (N.D. Ill. 1983), *aff'd sub nom. Flores v. Levy Co.*, 757 F.2d 806
(7th Cir. 1985)........................................................................................ 36

*Atl. Fruit Co. v. Red Cross Line*,
5 F.2d 218 (2d Cir. 1924) ...................................................................... 18

*Auto. Mechs. Loc. 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*,
502 F.3d 740 (7th Cir. 2007) ................................................................. 14

*Badgerow v. Walters*,
142 S. Ct. 1310 (2022) ..................................................................... 20, 24

*Baierl v. McTaggart*,
629 N.W.2d 277 (Wis. 2001).................................................................. 40

*Bd. of Educ. of Berkeley Cnty. v. W. Harley Miller, Inc.*,
236 S.E.2d 439 (W. Va. 1977)................................................................ 35

*Beery v. Quest Diagnostics, Inc.*,
No. 12-CV-00231 KM MCA, 2013 WL 3441792 (D.N.J. July 8, 2013) ................ 50

*Beltran v. AuPairCare, Inc.*,
907 F.3d 1240 (10th Cir. 2018) ............................................................. 34

*Bernhardt v. Polygraphic Co. of Am., Inc.*,
350 U.S. 198 (1956) ............................................................................... 22

*Boaz v. FedEx Customer Info. Servs., Inc.,*
   725 F.3d 603 (6th Cir. 2013) ........................................................... 37-38

*Brooklyn Sav. Bank v. O'Neil,*
   324 U.S. 697 (1945) .......................................................................... 10, 37

*Brown v. MHN Gov't Servs., Inc.,*
   306 P.3d 948 (Wash. 2013) ...................................................................... 35

*Brumley v. Commonwealth Bus. Coll. Educ. Corp.,*
   945 N.E.2d 770 (Ind. Ct. App. 2011) ...................................................... 40

*Campbell v. City of Los Angeles,*
   903 F.3d 1090 (9th Cir. 2018) .................................................... 46, 48, 51

*Canady v. Anthem Cos.,*
   9 F.4th 392 (6th Cir. 2021) ...................................................................... 49

*Castellanos v. Raymours Furniture Co., Inc.,*
   291 F. Supp. 3d 294 (E.D.N.Y. 2018) ...................................................... 38

*Coan v. Nightingale Home Healthcare, Inc.,*
   No. 1:05-CV-0101-DFH-TAB, 2006 WL 1994772 (S.D. Ind. July 14, 2006) ......... 41

*Coinbase, Inc. v. Bielski,*
   143 S. Ct. 1915 (2023) .............................................................................. 18

*Conwell v. Gray Loon Outdoor Mktg. Grp., Inc.,*
   906 N.E.2d 805 (Ind. 2009) ............................................................... 29, 32

*Cooper v. Terminix Int'l Co.,*
   No. 4:17-CV-3671, 2018 WL 1998973 (S.D. Tex. Apr. 11, 2018) ........... 50

*Davis v. Glob. Client Sols., L.L.C.,*
   765 F. Supp. 2d 937 (W.D. Ky. 2011) ...................................................... 35

*Davis v. Mills,*
   194 U.S. 451 (1904) .................................................................................. 36

*Devlin v. Scardelletti,*
   536 U.S. 1 (2002) ................................................................................ 42, 43

*Ditto v. RE/MAX Preferred Properties, Inc.,*
   861 P.2d 1000 (Okla. Civ. App. 1993) ...................................................... 35

*Doe v. Carmel Operator, LLC,*
   160 N.E.3d 518 (Ind. 2021) ................................................................ 27, 28

*Douglas v. Western Union Co.*,
  955 F.3d 662 (7th Cir. 2020) .......................................................... 42

*Drexel Burnham Lambert, Inc. v. Valenzuela Bock*,
  696 F. Supp. 957 (S.D.N.Y. 1988) ................................................. 19

*Ennenga v. Starns*,
  677 F.3d 766 (7th Cir. 2012) .................................................... 14, 44

*Espenscheid v. DirectSat USA, LLC*,
  688 F.3d 872 (7th Cir. 2012) ......................................... 44, 45, 46, 52

*Gabriel v. Windsor, Inc.*,
  843 N.E.2d 29 (Ind. Ct. App. 2006) .............................................. 29

*Genesis Healthcare Corp. v. Symczyk*,
  569 U.S. 66 (2013) ................................................................ 46, 51

*Goplin v. WeConnect, Inc.*,
  893 F.3d 488 (7th Cir. 2018) ....................................................... 14

*Guaranty Trust Co. of N.Y. v. York*,
  326 U.S. 99 (1945) .................................................................... 22

*Hackler v. R.T. Moore Co.*,
  No. 2:17–cv–262–FtM–29MRM, 2017 WL 6535856 (M.D. Fla. Dec. 21, 2017).... 38

*Hall Street Associates, L.L.C. v. Mattel, Inc.*,
  552 U.S. 576 (2008) ........................................................ 23, 24, 30

*Halle v. West Penn Allegheny Health System, Inc.*,
  842 F.3d 215 (3d Cir. 2016) ........................................... 43, 44, 49, 50

*Hanna v. Plumer*,
  380 U.S. 460 (1965) .................................................................. 15

*Harper v. Ultimo*,
  113 Cal. App. 4th 1402 (2003) ..................................................... 33

*Heiar v. Crawford Cnty.*,
  746 F.2d 1190 (7th Cir. 1984) ...................................................... 24

*Hoffmann-La Roche Inc. v. Sperling*,
  493 U.S. 165 (1989) .................................................................. 52

*Hollins v. Regency Corp.*,
  867 F.3d 830 (7th Cir. 2017) ................................................... 47, 53

*Hooters of Am., Inc. v. Phillips*,
   173 F.3d 933 (4th Cir. 1999) ................................................................. 32, 35

*Hudson v. Chicago Tchrs. Union Loc. No. 1*,
   743 F.2d 1187 (7th Cir. 1984), *aff'd*, 475 U.S. 292 (1986) ..................... 34

*Illinois v. City of Chicago*,
   912 F.3d 979 (7th Cir. 2019) ....................................................................... 42

*Jackson v. Payday Fin., LLC*,
   764 F.3d 765 (7th Cir. 2014) ................................................................. 14, 32

*Jewell Ridge Coal Corp. v. Loc. No. 6167, United Mine Workers of Am.*,
   325 U.S. 161 (1945) ......................................................................... 35-36, 37

*Johnson v. Orkin, LLC*,
   556 Fed. App'x 543 (7th Cir. 2014) ..................................................... 14, 15

*Johnson v. Sprague*,
   614 N.E.2d 585 (Ind. Ct. App. 1993) ........................................................ 32

*Koch v. Jerry W. Bailey Trucking, Inc.*,
   51 F.4th 748 (7th Cir. 2022) ....................................................................... 47

*Kulukundis Shipping Co., S/A, v. Amtorg Trading Corp.*,
   126 F.2d 978 (2d Cir. 1942) ........................................................................ 18

*Malone & Hyde, Inc. v. RTC Transp., Inc.*,
   515 So.2d 365 (Fla. Dist. Ct. App. 1987) ................................................. 33

*Marbury v. Madison*,
   5 U.S. 137 (1803) ................................................................................... 20-21

*Mazurkiewicz v. Clayton Homes, Inc.*,
   971 F. Supp. 2d 682 (S.D. Tex. 2013) ...................................................... 38

*McKee v. AT & T Corp.*,
   191 P.3d 845 (Wash. 2008) ........................................................................ 39

*McMullen v. Meijer, Inc.*,
   355 F.3d 485 (6th Cir. 2004) ...................................................................... 34

*Meacham v. Jamestown, F. & C.R. Co.*,
   105 N.E. 653 (N.Y. 1914) ........................................................................... 19

*Medina v. Happy's Pizza Franchise, LLC*,
   No. 10 C 3148, 2012 WL 1094353 (N.D. Ill. Apr. 2, 2012) ..................... 48

*Mickles v. Country Club, Inc.*,
   887 F.3d 1270 (11th Cir. 2018) ...................................... 46, 48, 49, 51, 52

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) ........................................................... 38

*MPACT Const. Grp., LLC v. Superior Concrete Constructors, Inc.*,
   802 N.E.2d 901 (Ind. 2004) ............................................... 29

*Murray v. United Food & Com. Workers Int'l Union*,
   289 F.3d 297 (4th Cir. 2002) ............................................. 35

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010) ............................................... 51

*New Prime Inc. v. Oliveira*,
   139 S. Ct. 532 (2019) ......................................................... 22

*Niedert v. Rieger*,
   200 F.3d 522 (7th Cir. 1999) ............................................. 24

*O'Toole v. Sears Roebuck & Co.*,
   No. 11 C 4611, 2014 WL 1388660 (N.D. Ill. Apr. 10, 2014) ................................. 47

*Olah v. Ganley Chevrolet, Inc.*,
   2006 WL 350204 (Ohio Ct. App. Feb. 16, 2006) .................................... 33

*Omni Tech Corp. v. MPC Sols. Sales, LLC*,
   432 F.3d 797 (7th Cir. 2005) ........................................... 23, 30

*Payne v. Hook*,
   74 U.S. (7 Wall.) 425 (1868) ............................................. 22

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
   388 U.S. 395 (1967) ....................................................... 19, 20

*Pruiett v. W. End Rests.*,
   LLC, No. 3:11–00747, 2011 WL 5520969 (M.D. Tenn. Nov. 14, 2011) ................. 38

*Red Cross Line v. Atl. Fruit Co.*,
   264 U.S. 109 (1924) ........................................................... 19

*Rittmann v. Amazon.com, Inc.*,
   971 F.3d 904 (9th Cir. 2020) ............................................. 28

*Rogers v. Watson*,
   46 F.2d 753 (7th Cir. 1931) ............................................... 21

*Satkar Hospitality Inc. v. Cook County Board of Review,*
  No. 10 C 6682, 2011 WL 2182106 (N.D. Ill. June 2, 2011) ................................... 16

*Saxon v. Southwest Airlines Co.,*
  No. 19-cv-00403, 2023 WL 2456382 (N.D. Ill. Mar. 10, 2023) ............................ 15

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
  559 U.S. 393 (2010) ...................................................................................... 15, 16

*Sherwood v. Marquette Transp. Co.,*
  587 F.3d 841 (7th Cir. 2009) ...................................................................... 23, 30

*Simmons v. United Mortg. & Loan Inv., LLC,*
  634 F.3d 754 (4th Cir. 2011) ................................................................................ 49

*Smith v. Pro. Transp., Inc.,*
  5 F.4th 700 (7th Cir. 2021) ................................................................................... 47

*Sonic-Calabasas A, Inc. v. Moreno,*
  311 P.3d 184 (Cal. 2013) ...................................................................................... 35

*Sonner v. Premier Nutrition Corp.,*
  971 F.3d 834 (9th Cir. 2020) ................................................................................ 22

*Spinsky v. Kay,*
  550 N.E.2d 349 (Ind. Ct. App. 1990) ............................................................ 19, 26

*Summers v. Crestview Apartments,*
  236 P.3d 586 (Mont. 2010) ................................................................................... 40

*Taylor v. Am. Income Life Ins. Co.,*
  No. 1:13CV31, 2013 WL 2087359 (N.D. Ohio May 14, 2013) ............................ 38

*Taylor v. Western & Southern Life Ins. Co.,*
  966 F.2d 1188 (7th Cir. 1992) .............................................................................. 38

*Torrance v. Aames Funding Corp.,*
  242 F. Supp. 2d 862 (D. Or. 2002) ...................................................................... 39

*Trout v. Organizacíon Mundial de Boxeo, Inc.,*
  965 F.3d 71 (1st Cir. 2020) ................................................................................... 35

*Turner v. Bank of N. Am.,*
  4 U.S. (4 Dall.) 8 (1799) ....................................................................................... 21

*Vaden v. Discover Bank,*
  556 U.S. 49 (2009) .............................................................................. 19, 20, 22

*Vallone v. CJS Sols. Grp., LLC,*
   9 F.4th 861 (8th Cir. 2021) ................................................................. 49

*Vasquez-Lopez v. Beneficial Or., Inc.,*
   152 P.3d 940 (Or. Ct. App. 2007) ...................................................... 39

*Viking River Cruises, Inc. v. Moriana,*
   142 S. Ct. 1906 (2022) ................................................................. 19, 38

*Walker v. Ryan's Fam. Steak Houses, Inc.,*
   400 F.3d 370 (6th Cir. 2005) ......................................................... 31, 35

*Waters v. Day & Zimmerman NPS, Inc.,*
   23 F.4th 84 (1st Cir. 2022), *cert. denied* 142 S. Ct. 2777 ......... 48, 50, 51

*Wenning v. Calhoun,*
   811 N.E.2d 933 (Ind. Ct. App. 2004) .............................................. 29, 32

*White v. United Airlines, Inc.,*
   987 F.3d 616 (7th Cir. 2021) ............................................................... 12

## STATUTES

9 U.S.C. § 6 ............................................................................................. 16

9 U.S.C. § 16 ........................................................................................... 21

9 U.S.C. § 201, *et seq.* ........................................................................... 17

9 U.S.C. § 301, *et seq.* ........................................................................... 17

29 U.S.C. § 141, *et seq.* ......................................................................... 17

29 U.S.C. § 201, *et seq.* ........................................................................... 1

29 U.S.C. § 216(b) ................................................................... 1, 36, 45, 50

29 U.S.C. § 255(a) ................................................................................... 36

29 U.S.C. § 256 ....................................................................................... 51

Act of Apr. 19, 1920, § 2, ch. 275, 1920 N.Y ....................................... 20

Act of June 1, 1872, § 5, ch. 255, 17 Stat. 196, 197 (1872) ................. 20

Act of Mar. 21, 1923, ch. 134, 1923 N.J ............................................... 20

Ind. Code Ann. §§ 34-57-2-3, -17, -18 ..................................................... 9

Ind. Code Ann. § 34-57-2-6 ................................................................ 34

Ind. Code Ann. § 34-57-2-16 .............................................................. 16

Ind. Code Ann. § 34-57-2-17 ........................................................ 25, 26

Ind. Code Ann. § 34-57-2-18 .............................................................. 26

## OTHER AUTHORITIES

Sullivan, Charles A., *The Puzzling Persistence of Unenforceable Contract Terms*, 70 Ohio St. L.J. 1127 (2009) .......................................................... 40

Fed. R. Civ. P. 12(g)(2) ...................................................................... 13

H.R. Rep. No. 100-889 (1988) ............................................................ 21

Joint Hearings on S. 1005 and H.R. 646 Before the Subcomm. of the Comm. on the Judiciary, 68th Cong. (1924). ....................................................... 19

Restatement (Second) of Contracts § 184 cmt. b ................................ 40

S. Rep. No. 78-536 (1924) .................................................................. 18

U.S. Const. art. I, § 8, cl. 3 ................................................................ 21

U.S. Const. art. III, § 1 ..................................................................... 21

## JURISDICTIONAL STATEMENT

Named-Plaintiff-Appellant Mary Rodgers-Rouzier, a citizen of Tennessee, brought this collective action against her former employers Defendants-Appellants American Queen Steamboat Operating Co., LLC and HMS Global Maritime, LLC, alleging that they violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, by failing to pay her and coworkers overtime wages when they worked in excess of forty hours per week. A55. American Queen is incorporated in Indiana and its principal place of business is in Indiana. HMS Global Maritime is incorporated in Delaware and its principal place of business is in Indiana. A56. The district court had federal-question jurisdiction under 28 U.S.C. § 1331.[1]

Pursuant to the procedures outlined in the FLSA, 29 U.S.C. § 216(b), 127 additional employees filed written consent with the court to become parties to the pending action in district court. *See* A38-A54.

The district court entered a final judgment dismissing the action in its entirety on March 31, 2023, A36-A37, that was accompanied by a memorandum and order, A1-A35. The district court's March 31, 2023, order compelled individual arbitration of Rodgers-Rouzier's claims, dismissed the complaint, and ruled that the 127 Opt-In Plaintiffs were not parties to the district court proceedings. *Id.*

---

[1] Throughout Appellants' Brief, citations to the Short Appendix, spanning pages A1 through A37, and the Separate Appendix, spanning pages A38 through A79 will consist of the appendix page number. References to documents not included in the appendices but filed in the district court or this Court will be cited, respectively, as "Dkt." or "App. Dkt.," followed by the ECF number of the filing.

Rodgers-Rouzier and the 127 Opt-In Plaintiffs filed a timely notice of appeal of the March 31, 2023, order and final judgment on April 27, 2023. A78-A80. This Court has jurisdiction over this appeal from final judgment under 28 U.S.C. § 1291.

On May 3, 2023, this Court ordered Appellants to file a memorandum stating why the appeal should proceed with the Opt-In Plaintiffs as Appellants, given that the district court held they were not parties. App. Dkt. 3. Appellants timely filed their jurisdictional memorandum. App. Dkt. 4. On May 17, 2023, the Court ordered Appellees to respond, App. Dkt. 5, and they did so, App. Dkt. 9. This Court issued a briefing order on May 30, 2023, in which it ordered the parties to address this jurisdictional question in their briefing. App. Dkt. 10. For the reasons explained in Appellants' jurisdictional memorandum, App. Dkt. 4, and in this Brief, *infra*, Part III.A, this court has jurisdiction over the Opt-In Plaintiffs' appeal of the district court's final determination that they were not parties to the proceedings below.

## STATEMENT ON ISSUES PRESENTED FOR REVIEW

1. Does Federal Rule of Civil Procedure 12(g)(2) allow parties to bring serial Rule 12(b)(3) motions?

2. May a federal court compel arbitration under state law where the Federal Arbitration Act, the state arbitration law, and the agreement do not authorize a federal court to compel arbitration under state law?

3. Is an arbitration agreement enforceable where it gives the drafter unfettered discretion to choose an arbitral service—and with that choice, the arbitrator and the rules—and where it strips employees of their substantive rights under the Fair Labor Standards Act?

4. Are opt-in plaintiffs who filed consent forms prior to conditional certification of a Fair Labor Standards Act collective party-plaintiffs, consistent with the plain text of the Act and every federal appellate court to have squarely addressed the question?

## STATEMENT OF THE CASE

### A. Background

Named Plaintiff Mary Rodgers-Rouzier was employed by American Queen Steamboat Operating Co., LLC, and HMS Global Maritime, LLC (collectively, American Queen) as a bartender on American Queen's riverboat fleet. A56. Rodgers-Rouzier worked seven days a week for six consecutive weeks at a time, with two weeks off between six-week tours. A58. While on tour, she worked twelve or more hours per day and 84 or more hours per week. *Id.* American Queen paid her $52 per day plus a portion of the service fees paid by guests. *Id.* American Queen's other service employees, including other bartenders, bar servers, bar staff, waitstaff, cooks and other kitchen employees, laundry attendants, and housekeeping employees work similar hours and are similarly paid—a day rate plus a percentage of the service fees. A55, A60-A61.

American Queen views its service employees as exempt from the overtime compensation requirements of the Fair Labor Standards Act (FLSA) and does not pay them overtime wages despite them working more than forty hours per week. A62.

### B. Proceedings Below

Rodgers-Rouzier brought this FLSA collective action against American Queen, alleging that American Queen violated the overtime compensation requirements of the FLSA by not paying her and other riverboat service employees overtime wages for hours worked in excess of forty per week. A55-A66.

As part of her employment, Rodgers-Rouzier had signed an arbitration agreement, and American Queen moved to compel individual arbitration of Rodgers-Rouzier's claims under the Federal Arbitration Act (FAA). Dkt. 76. That motion was denied because she is a "seaman" whose employment contract is exempt under § 1 of the FAA, meaning that arbitration of her claims cannot be compelled under the FAA. Dkt. 97. That Rodgers-Rouzier cannot be compelled to arbitrate under the FAA is no longer in dispute.

After American Queen's motion to compel arbitration was denied, Rodgers-Rouzier moved for conditional certification of the collective action, which would have resulted in notice to a defined class of American Queen service employees. Dkt. 106, Dkt. 107. American Queen opposed conditional certification on the basis that its employees are bound by agreements to arbitrate their claims individually that, it contended, are enforceable under Indiana state arbitration law even if they are not enforceable under the FAA. Dkt. 117, at 19-24. However, American Queen failed to provide the district court with sufficient evidence of the existence of the employees' supposed arbitration agreements, and the district court ordered American Queen to submit such evidence. A71-A72. It denied Rodgers-Rouzier's motion for certification without prejudice, inviting her to re-file the motion once American Queen had submitted sufficient evidence to prove the existence of an arbitration agreement for each employee it sought to exclude from the proposed collective. A72.

Nevertheless, both before and after the certification motion, 127 American Queen employees opted into the lawsuit—the Opt-In Plaintiffs whose right to appeal

is at issue here. American Queen submitted evidence to the district court that most, but not all, of the 127 Opt-In Plaintiffs had entered into arbitration agreements with American Queen.[2] In a footnote in that submission, American Queen asserted that the Opt-In Plaintiffs are not parties absent conditional certification. Dkt. 144, at 2 n.1. In response, Plaintiffs explained that the Opt-In Plaintiffs are "full party plaintiffs" regardless of certification and "are positioned identically to the Named Plaintiff." Dkt. 149, at 4-5. American Queen has never moved to compel arbitration of the Opt-In Plaintiffs' claims.

Instead, American Queen renewed its Rule 12(b)(3) motion to compel individual arbitration of Rodgers-Rouzier's claims, this time under Indiana contract law, and dismiss the complaint. Dkt. 151, Dkt. 152. Rodgers-Rouzier opposed the motion, arguing, among other things, that American Queen's motion was impermissible under Federal Rule of Civil Procedure 12(g)(2) because it was a serial Rule 12(b)(3) motion, Dkt. 156, at 2-3; and that the federal district court could not compel arbitration under state law where the contract is exempted under § 1 of the FAA, particularly where the contract itself states it is governed by the FAA. *Id.* at 5-8. Rodgers-Rouzier also argued that the agreement was unenforceable because it gives American Queen unilateral, unfettered choice over the arbitral service and, in turn, the rules and the arbitrator. *Id.* at 7; Dkt. 81, at 11-12. Finally, Rodgers-Rouzier

---

[2] American Queen also submitted evidence regarding the arbitration agreements of most other members of the proposed collective. Dkt. 144. Plaintiffs disputed that the evidence was sufficient, but the district court never resolved that dispute. *See* Dkt. 149, at 7-8; A34.

argued the agreement's provision requiring claims to be brought within six months is unenforceable because it deprives employees of their FLSA rights. Dkt. 156, at 6; Dkt. 81, at 14-15.

The district court rejected Rodgers-Rouzier's arguments, granted American Queen's motion to compel arbitration, and dismissed Rodgers-Rouzier's claims. A1-A36; A37-A38. Rodgers-Rouzier now appeals that final order compelling arbitration and dismissing her claims.

In that same order, the district court "acknowledge[d] that in excess of one hundred Putative Collective Members have at this time already opted-in to this lawsuit. However, because the Collective Action has never been certified, indeed, notice has never issued, these individuals are not actually party-plaintiffs to this litigation." A33. The Opt-In Plaintiffs now appeal the district court's decision that certification is required for individuals who opt into FLSA collective actions to be parties to the litigation.

## SUMMARY OF ARGUMENT

The district court erred in considering and granting American Queen's renewed motion to compel arbitration of Rodgers-Rouzier's claims under Indiana law and dismissing her claims. The district court also erred in holding that the 127 Opt-In Plaintiffs were not parties to the litigation.

**I**. American Queen's renewed motion to compel arbitration of Rodgers-Rouzier's claims and dismiss the complaint was an improper serial Rule 12(b)(3) motion, and the district court should not have entertained it. Federal Rule of Civil

7

Procedure 12(g)(2) requires parties to raise any defenses in the same motion if those defenses were available to it at the time of the initial motion. Rule 12(h)(1) explains that if a party fails to raise defenses under Rule 12(b)(2)-(5) in its original motion, those defenses are waived.

Here, after American Queen lost its original Rule 12(b)(3) motion to compel arbitration of Rodgers-Rouzier's claims under the FAA, it tried to take a second bite at the apple by filing a renewed 12(b)(3) motion to compel arbitration under state law. Because there can be no serious contention that American Queen could not have raised its state-law arbitration argument in its original Rule 12(b)(3) motion, it waived its right to do so under a straightforward application of Rule 12. The district court erred in considering American Queen's Indiana-law argument at all, and its order compelling arbitration and dismissing Rodgers-Rouzier's claims should be reversed on this basis alone.

**II.A.** Even if the district court could have considered American Queen's renewed 12(b)(3) motion, as a federal court, it was not authorized to compel arbitration under Indiana law. First, the FAA provides the exclusive mechanism to compel arbitration in federal court. Federal courts are not authorized to order specific performance of pre-dispute arbitration agreements absent authorization from Congress to do so, and Congress has only authorized federal court to do so for arbitration agreements that are enforceable under the FAA, which Rodgers-Rouzier's agreement is not. Federal courts cannot compel arbitration under state law.

Second, the text of the Indiana Uniform Arbitration Act (IUAA) makes clear that it only operates to compel arbitration in state court, not federal court. The IUAA provides for applications to compel arbitration in courts with jurisdiction under the statute, and only Indiana circuit and superior courts are courts with IUAA jurisdiction—no federal courts have statutory jurisdiction to compel arbitration under the IUAA. *See* Ind. Code Ann. §§ 34-57-2-3, -17, -18. Indiana law does not allow arbitration unless authorized by statute, and the statute does not provide for federal courts compelling arbitration.

Third, American Queen's arbitration agreement expressly states that it is governed by the FAA—not Indiana law. Under Indiana law, parties' choice of governing law is honored, and it should be so honored here. Because arbitration cannot be compelled under the FAA here, that should be the end of the inquiry.

The district court's order compelling arbitration can be reversed on the basis of any one of these reasons why it lacked authority to compel arbitration under Indiana law.

**II.B.** Even if the district court had authority to compel arbitration under state law, it should not have done so here because the terms of the agreement render it unenforceable. First, the agreement gives American Queen unilateral, unfettered choice as to the arbitration service—and by extension, the arbitral rules and the arbitrator. The essential terms of the agreement to arbitrate are indefinite and at the whim of the drafting party, and therefore arbitration cannot be compelled, full stop. For courts to order specific performance, Indiana requires that the essential terms be

9

sufficiently specific, and they are not so here. Further, courts around the country decline to enforce agreements where the arbitral forum and rules are unknowable by the non-drafter of the arbitration agreement or otherwise up to the drafter after the dispute arises. And because selecting the arbitration service allows American Queen to unilaterally select the arbitrator or pool of arbitrators, it is patently unconscionable.

Second, the provision in American Queen's arbitration agreement limiting the period for filing claims to six months is invalid because it strips employees of substantive rights under the FLSA. The FLSA's statute of limitations is a substantive right because it determines the amount of liquidated damages the employee would be entitled to under the statute. The Supreme Court has held that contractual waivers of substantive rights under the FLSA, including limitations on damages, are invalid. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945). Shortening the statute of limitations reduces the damages available to an employee and American Queen's contractual provision purporting to do so is invalid—whether part of an agreement to arbitrate or not.

Even if the arbitration agreement as a whole is not enforceable on the basis that it allows American Queen to unilaterally select any arbitration service, arbitration should not be compelled because the agreement contains multiple unenforceable provisions, which should not be severed. Where an arbitration agreement is imbued with unenforceable provisions, severing those terms and compelling arbitration does not rectify the fundamental unfairness of subjecting

10

parties to unenforceable terms. Further, permitting drafters to compel arbitration where they imposed multiple unenforceable arbitration provisions incentivizes drafters to continue to include unenforceable provisions, which can deter parties from bringing claims. For these reasons, too, the district court's decision compelling arbitration should be reversed.

**III.A.** In addition to Rodgers-Rouzier appealing the district court's order compelling arbitration and dismissing her claims, the 127 Opt-In Plaintiffs appeal the district court's holding that they were not parties to the action. This Court has appellate jurisdiction over the Opt-In Plaintiffs' appeal of the final decision that they were not parties to the litigation below. The district court's order was a final order holding that the Opt-In Plaintiffs are not parties, and this court reviews final orders denying party status.

**III.B.** The Opt-In Plaintiffs were parties to the litigation below on par with the named plaintiff under the plain terms of the FLSA, regardless of whether the district court had granted conditional certification of the collective action. Section 216(b)'s only requirement for an employee to become a party to an FLSA collective action is for the employee to file a written notice with the court, that is, to opt-in to the action; it says nothing about conditional certification, a concept inartfully borrowed from class-action procedures. Section 256 of the FLSA supports the view that employees become party-plaintiffs at the time they opt in by explaining that an opt-in plaintiff's FLSA action commences at the time the opt-in notice is filed. Further, § 256 contemplates that opt-in plaintiffs can become party-plaintiffs on the same day the

named plaintiff field their complaint—an impossibility if conditional certification were a prerequisite.

This Court has never squarely addressed the question whether conditional certification is required for an opt-in plaintiff to be a party, but every circuit to have considered the question has held that conditional certification is not required. This Court's precedent is not to the contrary, and it should follow the well-reasoned decisions of its sister circuits, hold that conditional certification is not required for an opt-in plaintiff to be a party, and reverse the district court's contrary decision.

## STANDARD OF REVIEW

Where, as here, there are no disputed factual issues material to a motion to compel arbitration, this Court reviews rulings on a motion to compel arbitration *de novo. A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1059 (7th Cir. 2018). Where the district court has applied an equitable doctrine, that ruling is reviewed for abuse of discretion. *Id.*

The question whether employees who opt-in to an FLSA collective action are parties to that action is a question of statutory interpretation subject to *de novo* review. *See White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021).

## ARGUMENT

### I.    American Queen Was Barred from Raising Its State-Law Defense by Federal Rule of Civil Procedure 12(g)(2).

The Federal Rules of Civil Procedure require that parties raise certain types of defenses in a single motion, or those defenses are waived. Fed. R. Civ. P. 12(g)(2), (h)(1). But here, after American Queen lost its Rule 12(b)(3) motion to compel arbitration under federal law, it filed another Rule 12(b)(3) motion raising the defense that it is entitled to compel arbitration under state law. The federal procedural rules do not allow parties to file serial motions raising new defenses and new arguments. As such, the district court erred in entertaining American Queen's motion to compel arbitration under Indiana law, and the district court's decision compelling arbitration of Rodgers-Rouzier's claims should be reversed on that basis alone.

Rule 12(g)(2) provides that, absent exceptions not at issue here, "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Rule 12(h)(1) specifies, "A party waives any defense listed in Rule 12(b)(2)-(5) by: (A) omitting it from a motion in the circumstances described in Rule 12(g)(2)." In other words, a party must raise any available defenses in a single Rule 12(b)(2)-(5) motion, or those defenses are waived. Rule 12 does not contain any exceptions to waiver for differing legal arguments or different defenses or different bodies of law. In fact, that is the point: A defendant does not get to raise new defenses or arguments in subsequent motions—it *must* raise them in the initial motion or waive them. *See*

13

*Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012) ("The policy behind Rule 12(g) is to prevent piecemeal litigation in which a defendant moves to dismiss on one ground, loses, then files a second motion on another ground.").

This Court has explained that Rule 12(b)(3)—which requires a party to raise the defense of improper venue by motion—is the proper mechanism for a party seeking to compel arbitration. *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 773 (7th Cir. 2014); *Auto. Mechs. Loc. 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007). *See also Goplin v. WeConnect, Inc.*, 893 F.3d 488, 490-91 (7th Cir. 2018) (analyzing a motion to compel arbitration as a Rule 12(b)(3) motion) (Barrett, J.); *Johnson v. Orkin, LLC*, 556 Fed. App'x 543, 544 (7th Cir. 2014). In the cases where it has so explained, this Court in no way relied on the FAA or the fact that the basis for the motion was federal law; the reasoning of those decisions applies whether the stated basis for arbitration is state or federal law.

Under Rule 12(g)(2) and (h)(1), American Queen waived any 12(b)(3) defenses that were available to it at the time it made its initial motion but which were not included. There can be no dispute here that American Queen could have raised the defense that Rodgers-Rouzier must arbitrate under Indiana law at the time it brought its initial 12(b)(3) motion but failed to do so. That should be the end of the inquiry: By failing to raise a state-law basis for arbitration in its initial 12(b)(3) motion, American Queen has waived that defense.

The district court recognized that American Queen's second Rule 12(b)(3) motion ran afoul of the rule, explaining that "the purpose of Rule 12(g) is to prevent

14

Defendants from being able to file a motion to dismiss on one ground (improper venue under the FAA), lose on this ground, and then file another motion to dismiss on another ground (improper venue under Indiana arbitration law)." A14-A15. The district court nevertheless held that American Queen was not barred from seeking to compel arbitration under Indiana law because—despite the title of its motion—it moved to compel not under Rule 12(b)(3), but the IUAA, an entirely new body of law. A14. But as this Court has explained, motions to compel arbitration *are* 12(b)(3) motions, regardless of what they are labeled. *Johnson*, 556 Fed. App'x at 544. And nothing in the text of Rule 12 makes some sort of exception for state-law defenses; such an exception would defeat the purpose of Rule 12(g)(2).[3]

Moreover, the federal rules of procedure are not suspended in federal court where a party raises a state-law defense. Where there is a duly enacted federal procedural rule addressing an issue, it controls, state law notwithstanding. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) (citing *Hanna v. Plumer*, 380 U.S. 460, 463-64 (1965)). A court need not necessarily analyze whether the state law in question is procedural: In federal court, if there is a valid

---

[3] The district court followed *Saxon v. Southwest Airlines Co.*, No. 19-cv-00403, 2023 WL 2456382, *2 (N.D. Ill. Mar. 10, 2023). Regardless of whether *Saxon* was correctly decided, it is distinguishable. There, the court determined that Southwest's subsequent motion to compel arbitration under state law could not be construed as Rule 12(b) motion because it was not a motion to dismiss, but rather a motion to stay. *Id.* Here, American Queen's subsequent motion is expressly a 12(b)(3) motion to dismiss and should be considered as such. Dkt. 151. To reconcile the cases, the district court purported to deny American Queen's motion insofar as it was a motion to dismiss, A15, but proceeded to dismiss rather than stay anyway, A34.

federal rule of procedure on point, it controls over any conflicting state law. *Id.* at 397.[4]

Here, Rule 12 is a duly enacted federal procedural rule that answers the question whether a party can bring serial motions on venue defenses, and the answer to that question is no, even if state law would permit it. *Satkar Hospitality Inc. v. Cook County Board of Review*, No. 10 C 6682, 2011 WL 2182106 (N.D. Ill. June 2, 2011), is analogous to the situation here. There, the defendants brought a timely and proper Rule 12(b) motion to dismiss, which was denied. *Id.* at *1-*2. The defendants then brought a second motion to dismiss, based on an entirely new body of law: the state anti-SLAPP statute. *Id.* at *2. The court construed the second motion as a prohibited second Rule 12(b) motion even though the parties had not labeled it as such and even though the state anti-SLAPP law would have permitted the parties to bring the motion. *Id.* at *2-*5.

This Court should reach the same result here and hold American Queen's IUAA motion a second prohibited Rule 12(b)(3) motion. The decision compelling individual arbitration of Rodgers-Rouzier's claims should be reversed on that basis alone.

---

[4] To the extent that that IUAA applies in federal court—which it does not, *see infra* part II.A—it would also require application of the Federal Rules. Like the FAA, 9 U.S.C. § 6, the IUAA provides that applications under it shall be made "by motion and shall be heard in the manner . . . provided by law or rule of court for the making and hearing of motions," Ind. Code Ann. § 34-57-2-16.

## II.    Even if American Queen's Motion to Compel Under State Law Could Be Considered, Rodgers-Rouzier Cannot Be Compelled to Arbitrate Her Claims.

Even if American Queen's motion to compel arbitration under state law were not prohibited by Rule 12(g)(2), this Court must reverse the district court's order compelling arbitration because a federal court cannot compel arbitration under Indiana law here and, even if it could, American Queen's arbitration agreement is unenforceable.

### A. The district court lacked authority to compel arbitration under Indiana law.

The FAA and the IUAA do not operate interchangeably in federal court, and the IUAA cannot simply substitute in where arbitration cannot be compelled under the FAA. The FAA provides the exclusive mechanism for compelling arbitration in federal court,[5] and the IUAA by its own terms only applies in state court. As such, a federal court cannot compel arbitration under the IUAA for those two independent reasons. And even if it could, it cannot do so here because the arbitration agreement provides that only the FAA governs whether arbitration can be compelled—and there is no dispute that, under the FAA, arbitration cannot be compelled here.

---

[5] Congress has separately authorized arbitration in the international and collective bargaining contexts, neither of which are relevant here. *See* 9 U.S.C. § 201, *et seq.* (N.Y. Convention); 9 U.S.C. § 301, *et seq.* (Inter-American Convention); 29 U.S.C. § 141, *et seq.* (Labor Management Relations Act).

17

### 1. Federal courts are not authorized to compel arbitration under state law.

Absent statutory authorization by Congress, federal courts cannot compel arbitration because they are barred from ordering specific performance of pre-dispute arbitration agreements. Section 4 of the FAA is the exclusive mechanism for compelling arbitration in federal court in these circumstances, and arbitration has already been denied here under § 4. Dkt. 97. While Rodgers-Rouzier is not aware of any court that has squarely addressed this argument, the conclusion that federal courts cannot compel arbitration under state law is the only one consistent with the FAA and more than a century of history.

The Supreme Court recently affirmed the importance of background rules in understanding the effect of the FAA *See Coinbase, Inc. v. Bielski*, 143 S. Ct. 1915, 1920-22 (2023) (assessing effect of § 16 against background divestiture rule). Prior to the enactment of the FAA in 1925, the background rule for federal courts was that specific performance was not available as a remedy for breach of pre-dispute arbitration agreements. *See* S. Rep. No. 78-536, at 2 (1924); *Kulukundis Shipping Co., S/A, v. Amtorg Trading Corp.*, 126 F.2d 978, 984 (2d Cir. 1942) (explaining "[a]n executory agreement to arbitrate would not be given specific performance or furnish the basis of a stay of proceedings on the original cause of action"). Parties could bring breach of contract claims for failure to arbitrate in federal court, but the only remedy available to them was damages. *See id.* at 989; *Atl. Fruit Co. v. Red Cross Line*, 5 F.2d 218, 220 (2d Cir. 1924). Although some states had already created a statutory

carveout from the background equitable rule in their own courts,[6] they could not do so in the federal forum because "arbitration relates to the law of remedies, and the law that governs remedies is the law of the forum." *Meacham v. Jamestown, F. & C.R. Co.*, 105 N.E. 653, 655 (N.Y. 1914) (Cardozo, J., concurring); *see Red Cross Line v. Atl. Fruit Co.*, 264 U.S. 109, 118-19 (1924) (Brandeis, J.) (citing *Meacham*). Thus, the task of authorizing federal courts to order arbitration fell to Congress.

Congress enacted the FAA to "address[] the inequity . . . where only one party to an arbitration agreement was a citizen of a state where such agreements were enforceable," and "the other party to the agreement at his option could either hold the first to arbitration by bringing suit in state court or defeat the agreement, at any time, by commencing suit under diversity jurisdiction in federal court." *Drexel Burnham Lambert, Inc. v. Valenzuela Bock*, 696 F. Supp. 957, 962 (S.D.N.Y. 1988) (Leval, J.), *abrogated by Vaden v. Discover Bank*, 556 U.S. 49 (2009). Congress partially "abrogated" the federal background "rule barring specific performance as a remedy for breach of an arbitration clause," *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1917 n.3 (2022), "in § 4 of the Act, which provides a remedy to a party

---

[6] State courts were also constrained by this background rule prior to their legislatures authorizing arbitration by statute. *See, e.g.*, *Spinsky v. Kay*, 550 N.E.2d 349, 351 (Ind. Ct. App. 1990) ("It is well-established a court will not decree specific performance of an agreement to decide a controversy by, or submit it to, arbitration or appraisal, except where authorized to do so by statute."). Thus, the proponents of arbitration reform had a strategy of authorizing arbitration in state, federal, and foreign courts with separate statutes for each. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 405 n.13 (1967) (citing Joint Hearings on S. 1005 and H.R. 646 Before the Subcomm. of the Comm. on the Judiciary, 68th Cong. 27-28 (1924)).

seeking to compel compliance with an arbitration agreement," *Prima Paint*, 388 U.S. at 403.

Where Congress has not created a carveout from the background rule, the background rule applies, and bars federal courts from ordering arbitration. In enacting the FAA, Congress deliberately chose not to authorize a broader remedy for breach of arbitration agreements. At that time, two states had arbitration statutes. Act of Apr. 19, 1920, § 2, ch. 275, 1920 N.Y. Laws 803, 804; Act of Mar. 21, 1923, ch. 134, 1923 N.J. Laws 291. Under the Conformity Act, which governed federal court procedure (including remedies) during that era, courts' procedures had to "conform, as near as may be" to the procedures "existing at the time in like causes in the courts of record of the [forum] State"—except those procedures in admiralty and equity. Act of June 1, 1872, § 5, ch. 255, 17 Stat. 196, 197 (1872). Against this backdrop, Congress could have entirely eliminated the rule against specific performance of arbitration agreements; or it could have required federal courts applying state law to adopt the equitable remedy conferred by state arbitration laws. Yet "Congress did neither." *Badgerow v. Walters*, 142 S. Ct. 1310, 1318 (2022). Rather, it created a mechanism in § 4 that applies wherever a federal court has jurisdiction over the underlying controversy. *See Vaden*, 556 U.S. at 62-65. That Congress chose to proceed in this fashion, rather than authorizing specific performance for all arbitration agreements or adopting the remedial procedures of state law, evidences that § 4 is the exclusive mechanism for compelling arbitration in federal court, and that the background rule bars arbitration where § 4 is not invoked. *Cf. Marbury v. Madison*, 5 U.S. 137, 174

(1803) (positive statutory grant of judicial power to federal courts is a negative on constitutionally-permissible power not so granted).

Since the enactment of the FAA, Congress has also indicated that state law does not authorize arbitration in federal court. When Congress enacted legislation in 1988 to "improve the appellate process in the Federal courts of appeals with respect to arbitration," H.R. Rep. No. 100-889, at 36 (1988), it limited its scope of coverage to orders under federal arbitration law. 9 U.S.C. § 16. That is because the provision that would become § 16 "consolidated and restated" "the various categories of appeals" in the Uniform Arbitration Act (UAA), a model for state-level arbitration legislation. H.R. Rep. No. 100-889, at 37 (1988). Congress understood when it modeled § 16 on the UAA that it was operating as state legislatures' counterpart in enacting legislation for the federal courts. Of course, Congress could have enacted legislation providing for interlocutory appeals from denials of *any* arbitration order pursuant to its constitutional powers. *See* U.S. Const. art. I, § 8, cl. 3; *id.* art. III, § 1. But it did not—because it has never authorized the federal courts to compel arbitration based on state law. *Cf. Rogers v. Watson*, 46 F.2d 753, 755 (7th Cir. 1931) ("If congress has given the power to [the] court[s], we possess it, not otherwise; and if congress has not given the power to us, . . . it still remains at the legislative disposal." (quoting *Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 10 (1799) (Chase, J.))).

21

Although the substantive effect of state arbitration law may apply in federal cases, it cannot force federal equity to provide a barred remedy.[7] "It has been a fundamental principle for well over a century that state law cannot expand or limit a federal court's equitable authority." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841 (9th Cir. 2020) (citing *Payne v. Hook*, 74 U.S. (7 Wall.) 425, 430 (1868)). As the Supreme Court has explicitly stated, "[s]tate law cannot define the remedies which a federal court must give simply because a federal court in diversity jurisdiction is available as an alternative tribunal to the State's courts." *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 106 & n.3 (1945) (also distinguishing between creating rights and authorizing remedies). The Supreme Court "has never repudiated its statements in *York*," *Sonner*, 971 F.3d at 841, and the background federal equitable rule barring specific performance of pre-dispute agreements governs where a party has not invoked a carveout provided by Congress—regardless of the remedy state law purports to authorize.[8]

---

[7] *Bernhardt v. Polygraphic Co. of America, Inc.*, explained that a federal court sitting in diversity should reject a motion to arbitrate based on state law where the agreement was substantively revocable under state law. 350 U.S. 198, 202-05 (1956). *Bernhardt* did not present the Court with a case of conflicting remedies in state and federal law that required resolution.

[8] Like any federal rule of procedure, § 4 applies wherever the court has jurisdiction over the underlying controversy. *See Vaden*, 556 U.S. at 62-65; *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 544 (2019) (affirming on basis that First Circuit "lacked authority under the Act to order arbitration" rather than affirming First Circuit's reasoning that it lacked jurisdiction because the FAA does not apply under the § 1 exemption).

In contrast to more than a century of history and law demonstrating that the FAA was necessary in the first place because federal courts could *not* compel arbitration based on state law, there is no on-point authority supporting the district court's decision that it could compel arbitration under Indiana law. The court below relied on *Sherwood v. Marquette Transportation Co.*, 587 F.3d 841, 843 (7th Cir. 2009), which held that "provisions for alternative dispute resolution may be enforced as contracts under state law, even if the provisions are outside the [FAA's] scope." A23-A24. But *Sherwood* did not squarely address the question of federal courts' authority to compel arbitration under state law; rather, *Sherwood* concerned interlocutory appellate jurisdiction under § 16, and only opined (in the absence of jurisdiction) on whether the FAA preempts state arbitration law. That is a distinct issue, and *Sherwood*'s dicta must be understood in that context. Moreover, *Sherwood* did not address which judicial forum, state or federal, could "enforce[]" the contract outside of the FAA. 587 F.3d at 843. *Sherwood*'s holding relied on *Omni Tech Corp. v. MPC Solutions Sales, LLC*, where this Court addressed another distinct issue: whether an agreement to refer disputes to an "independent accountant" was "valid under Wisconsin law"; not whether the district court was otherwise barred from ordering arbitration. 432 F.3d 797, 798, 800 (7th Cir. 2005).[9] In sum, these cases do not raise the question presented here, much less answer it.

---

[9] The district court also cited *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008), as support for the proposition that it could compel arbitration under state law. A24. But *Hall Street* merely left open the possibility of "other possible avenues for judicial enforcement of arbitration awards." 552 U.S. at 590. Moreover, *Hall*

Rodgers-Rouzier argued below that the district court's "power to compel arbitration flows from the [FAA]" and that the court therefore "lack[ed] power to compel her to arbitrate" where the FAA does not authorize arbitration. Dkt. 81, at 1, 4; *see also id.* at 5, 8; Dkt. 37, at 1, 4-5, 17; Dkt. 156, at 7 n.3 ("[T]he very purpose of the FAA was to remedy circumstances where federal courts refused to order specific performance of an arbitration contract."). The district court rejected this argument when it ordered arbitration pursuant to Indiana law. A13. Just as this Court will consider on appeal a question concerning the district court's ability to render relief in the underlying action, *Heiar v. Crawford Cnty.*, 746 F.2d 1190, 1196 (7th Cir. 1984), so too should it squarely address Rodgers-Rouzier's argument that the district court lacked authority to provide the remedy requested below. *See also Niedert v. Rieger*, 200 F.3d 522, 528 (7th Cir. 1999) (factors tending towards review under prudential standard include whether argument "rests entirely on a pure issue of [law]," which is the case here, and whether addressing it would require further fact-finding, which would not be required here).

American Queen properly sought relief under § 4, Dkt. 75, and that relief was properly denied, Dkt. 97. This Court should decline American Queen's invitation to ignore the limits Congress intentionally placed on federal-court authority.

---

*Street*'s statement that "[t]he FAA is not the only way into court for parties wanting review of arbitration awards" logically refers to parties' ability to seek review of arbitration awards in state court "under state statutory or common law." *Id. See also Badgerow*, 142 S. Ct. at 1316 (recognizing state courts' "prominent role" in enforcing arbitral awards and arbitration agreements).

### 2. The IUAA, by its own terms, is limited to state-court enforcement of arbitration agreements.

American Queen cannot compel arbitration of Rodgers-Rouzier's claims under Indiana law in federal court for another reason as well: The IUAA contemplates compelling arbitration *only* in state court and offers no basis for compelling arbitration in federal court.

American Queen did not invoke the IUAA in its motion to compel below. Rather, it based its argument on Indiana contract law and cases involving the FAA. *See, e.g.*, Dkt. 152, at 8. The district court applied the IUAA even though American Queen made no such motion. Thus, Rogers-Rouzier's argument concerning the IUAA's applicability in the federal forum is properly before this Court.

IUAA § 34-57-2-3(c) provides for compelling arbitration where there is existing litigation, as there is here: "If an issue referable to arbitration under the alleged agreement is involved in an action or proceeding pending in a court having jurisdiction to hear applications under subsection (a), the application shall be made in that action or proceeding. Otherwise and subject to section 17 of this chapter, the application may be made in any court with jurisdiction." Section 17 provides: "The term 'court' means any circuit or superior court. The making of an agreement described in section 1 of this chapter providing for arbitration in Indiana confers jurisdiction on the court to enforce the agreement under and to enter judgment on an award thereunder." Ind. Code Ann. § 34-57-2-17.

In other words, by the statute's express terms, the only courts in which arbitration can be compelled under the IUAA are the circuit and superior courts of Indiana, not federal district courts.

While it does not apply to the circumstances here, § 18 of the statute further supports this interpretation, requiring that an application to compel arbitration under the IUAA where there is no existing litigation be made "to the court in the county where the adverse party resides or has a place of business." Ind. Code Ann. § 34-57-2-18. Because only a handful of Indiana's 92 counties also have federal courts, it is obvious the Indiana legislature only intended arbitration to be compelled under the IUAA in state court.

Further, for a court to have jurisdiction to compel arbitration under the IUAA, the agreement must "provid[e] for arbitration in Indiana." Ind. Code Ann. § 34-57-2-17. The agreement, here, however, provides that "arbitration will be held in the county and state of my last employment with the Company." A75. Because Rodgers-Rouzier was domiciled in Tennessee at all relevant times, A56, that is likely her state of employment, not Indiana. As such, the district court lacked statutory jurisdiction to compel arbitration under the IUAA for this reason as well.

This Court should reverse the district court's order compelling arbitration under Indiana law because the IUAA's provisions for compelling arbitration are limited to Indiana state courts with statutory jurisdiction, and Indiana law does not allow for arbitration unless authorized by the statute. *See Spinsky*, 550 N.E.2d at 351.

### 3. American Queen's employment agreement does not provide for arbitration under Indiana law.

Even if a federal court could, in theory, compel arbitration under Indiana law, it cannot do so here, where American Queen's agreement expressly provides that it "shall be governed by the Federal Arbitration Act." A76. Because arbitration of Rodgers-Rouzier's claims cannot be compelled under the FAA, that should be the end of the inquiry. The district court's ruling that Indiana law can operate to enforce an arbitration agreement even where the agreement specifies it is to be governed by the FAA is inconsistent with the plain language of the contract and with Indiana law. A23; A70; A76.

Because state law recognizes arbitration is a matter of contract, Indiana courts honor the choice of arbitration law that the parties select in their contract. In *Albright v. Edward D. Jones & Co.*, 571 N.E.2d 1329 (Ind. Ct. App. 1991), the parties disputed whether an arbitration agreement should be construed according to the FAA or Missouri law. The agreement specified "[t]his agreement and its enforcement shall be governed by the laws of the State of Missouri." *Id.* at 1332. The Court honored the parties' agreement—Missouri law applied, and the Court found case law under the FAA was "not binding authority." *Id.* at 1332-33, 1334 n. 5.

Moreover, the Indiana Supreme Court has explained that where parties agree that their arbitration agreement is governed by the FAA, "federal law governs the Agreement's substance." *Doe v. Carmel Operator, LLC*, 160 N.E.3d 518, 521 (Ind. 2021). In that case, the court only looked to state law to determine whether a third

27

party could enforce an arbitration agreement because federal arbitration law specifically provided that state law governed that question. *Id.* Here, nothing in federal law—which was the parties' choice of law governing the arbitration agreement—provides that courts can automatically swap state law for federal law whenever federal law would not enforce the agreement to arbitrate. The FAA governs the substance of the agreement under *Doe*, and the FAA does not enforce this contract.

The Ninth Circuit declined compel under state arbitration law in a similar situation involving a worker contract that specified that the FAA governed, but which was exempt under § 1. *See Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 919-20 (9th Cir. 2020). The contract provided that the terms of the contract "are governed by the law of the state of Washington without regard to its conflict of law principles, except for Section 11 of this Agreement, which is governed by the Federal Arbitration Act and applicable federal law," with Section 11 being the portion dealing with arbitration. *Id.* at 920. The Ninth Circuit declined to sever the agreement's FAA exception and apply Washington law to the arbitration provisions because it was not clear from the contract that parties would have intended Washington law to apply in the absence of the FAA, and ambiguities must be construed against the drafter. *Id.*

Like the contract at issue in *Rittmann*, it is unclear here whether the parties intended state law to substitute in where enforcement is unavailable under the FAA. Indeed, here it is even less clear what the alternative state law the parties might have intended since the stand-alone arbitration agreement does not provide for any

state-law alternative. And Indiana law, like the Washington law at issue in *Rittmann* requires courts to construe ambiguities against the drafter. *See MPACT Const. Grp., LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 910 (Ind. 2004). This Court should reach the same conclusion as *Rittmann* and decline to substitute in state arbitration law.

If anything, Indiana law makes it more evident than Washington law that clarity would be required to compel arbitration under a body of law not specified in the contract. Compelling arbitration is a form of specific performance, and Indiana law does not permit courts to order specific performance unless the contract specifies all the essential terms of the deal. *See, e.g.*, *Conwell v. Gray Loon Outdoor Mktg. Grp., Inc.*, 906 N.E.2d 805, 813 (Ind. 2009) (a contract "may not be specifically enforced" where "any essential element" is omitted from a contract); *Gabriel v. Windsor, Inc.*, 843 N.E.2d 29, 48 (Ind. Ct. App. 2006) ("A court may not substitute its own ideas for any of the terms or conditions of the contract."). If the essential element is "left obscure and undefined" then a case is "not one for specific performance." *Wenning v. Calhoun*, 811 N.E.2d 933, 935 (Ind. Ct. App. 2004), *on reh'g*, 827 N.E.2d 627 (Ind. Ct. App. 2005). Here, if the provision specifying that the FAA governs arbitration is severed, the essential element of the governing law is missing, and arbitration cannot be compelled under Indiana contract law.

In reaching the opposite conclusion, the district court relied on *Sherwood*, but *Sherwood* neither addressed a situation where the contract expressly stated that it was governed by the FAA, nor did it involve Indiana law. A23-A24. Rather, *Sherwood*

29

involved a motion to compel exclusively under Illinois state law in part because the agreement expressly provided that all disputes would be arbitrated under the Illinois Uniform Arbitration Act. *See Sherwood*, 587 F.3d at 842. Though not relevant to the question presented in *Sherwood*, this Court indicated—on an issue over which it had no jurisdiction—that contracts may be enforceable under state law where they are not enforceable under the FAA. *Id.* But that language did not address a situation where the contract specifies that the FAA governs, nor did it address where such enforcement would occur. *Id.* at 843. Likewise, *Omni*, relied on by *Sherwood*, did not involve an agreement that stated it would be governed by the FAA. *See* 432 F.3d at 799. *Hall Street* is similarly unhelpful because while it recognizes that state arbitration codes may provide another avenue for enforcing an arbitration award, it does not say anything about whether arbitration may be compelled under state law in federal court. *See* 552 U.S. at 590. Under the agreement here, arbitration cannot be compelled under state law, and *Sherwood*, *Omni*, and *Hall Street* do not compel a different result.

**B. Even if the district court could compel arbitration under Indiana law, the terms of American Queen's arbitration agreement render it unenforceable.**

**1. The agreement's provision granting American Queen unfettered discretion to select the forum, the arbitrator, and the rules of arbitration renders the agreement unenforceable.**

American Queen's arbitration agreement is unenforceable because it gives American Queen unfettered, unilateral discretion to choose any arbitration service,

rules, or arbitrator. The agreement provides: "The arbitration shall be conducted under the rules and procedures of the American Arbitration Association, Judicial Arbitration and Mediation Services, or another arbitration service selected by the Company." A75. The third option places no limits on the service American Queen can select. American Queen is free to select an arbitration service that includes a single arbitrator, thereby also unilaterally selecting the arbitrator. It is free to choose an arbitration service controlled by the company—like the arbitration service in the Ryan's Family Steak Houses line of cases. *See, e.g., Walker v. Ryan's Fam. Steak Houses, Inc.*, 400 F.3d 370, 385 (6th Cir. 2005). It is free to choose an arbitration service with oppressive rules that would make it impossible for Rodgers-Rouzier to prevail on her claims. Arbitration agreements including indefinite or changeable terms of arbitration are unenforceable in their entirety, and terms permitting one party to control arbitrator selection are not enforceable either.

Where an arbitration agreement fails to put a party on notice of which rules will apply in arbitration or permits the terms of arbitration to change, arbitration cannot be compelled under Indiana law. Here, because American Queen unilaterally selects the forum and its rules at the time the dispute arises, employees have no way of knowing which rules will govern arbitration, and the applicable rules could change at American Queen's whim. A contract that purports to bind a party to such indefinite and changeable terms is not enforceable.

As explained, *supra*, compelling arbitration is a form of specific performance, and Indiana law forecloses courts from ordering specific performance of any contract

where the terms are indefinite. *See, e.g.*, *Conwell*, 906 N.E.2d at 813. If the essential element is "left obscure and undefined" then a case is "not one for specific performance." *Wenning*, 811 N.E.2d at 935. Put another way, where the intention of the parties is uncertain with regard to any substantial term of the contract, "the case is not one for specific performance." *Johnson v. Sprague*, 614 N.E.2d 585, 588 (Ind. Ct. App. 1993).

Here, American Queen's arbitration contract is indefinite as to which arbitral forum and rules will govern the proceedings—a substantial term for an agreement to arbitrate—and, therefore, specific performance of compelling arbitration is not appropriate. Even if a court were to compel Rodgers-Rouzier's claims to arbitration, she has no way to commence arbitration without risking American Queen objecting to her choice of arbitral forum. Such an agreement is unenforceable "because it allow[s] the [drafters] to manipulate what purported to be a fair arbitration process by selecting an arbitrator and proceeding according to nonexistent rules." *Jackson*, 764 F.3d at 781; *see Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 940 (4th Cir. 1999) ("so many biased rules—especially the scheme whereby one party to the proceeding so controls the arbitral panel—breaches the contract").

Courts in other states have similarly declined to compel arbitration where the arbitral forum and rules are unknowable by the non-drafter of the arbitration agreement or could change at any time. Where the drafter knows the procedural rules that will govern, but those rules are not provided for in the contract, Ohio courts explain that the non-drafter "could not have known what being bound to arbitration

really meant. The clause does not include some very important and material information plaintiffs would have needed in order to make an informed decision about whether to agree to arbitration." *Olah v. Ganley Chevrolet, Inc.*, 2006 WL 350204, at *5 (Ohio Ct. App. Feb. 16, 2006). Florida law similarly declines to enforce arbitration agreements where they fail to communicate which procedures govern arbitration, reasoning that no valid contract to arbitrate was formed. *See Malone & Hyde, Inc. v. RTC Transp., Inc.,* 515 So.2d 365, 366 (Fla. Dist. Ct. App. 1987) ("Provisions in a contract providing for arbitration must be definite enough so that the parties at least have some idea as to . . . [the] procedures by which arbitration is to be effected.").

Washington and California law do not enforce arbitration agreements where the procedures may be changed at any time. *Al-Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254, 1259-60 (9th Cir. 2005) (provision allowing company to unilaterally modify rules and procedures governing arbitration "almost at will" substantively unconscionable); *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1407, (2003) (holding unenforceable a provision that pegged arbitration procedures to rules that may change).

In short, though there is not Indiana law directly on point, courts that have examined arbitration clauses that, like American Queen's, do not enable the non-drafter to ascertain which arbitral procedures will govern arbitration, the contracts lack sufficient information to allow a non-drafter to meaningfully agree to arbitrate. There is no reason to think that, given the opportunity, Indiana courts would not reach the same conclusion.

33

The IUAA does not rectify this problem. The statute lays out a set of procedural rules that will govern arbitration "[u]nless otherwise provided by the agreement." Ind. Code Ann. § 34-57-2-6. Here, the agreement *does* provide otherwise—it gives American Queen unfettered discretion to choose the arbitral forum and, along with that choice, its rules. There is no gap-filling for the statute to do. Unlike American Queen's agreement, if the agreement made no mention of the arbitral forum or rules, the employee would know exactly which procedures would govern arbitration: those laid out in the IUAA.

Because American Queen's arbitration clause allows it to choose *any* arbitral forum, it could choose a forum with either a single arbitrator or procedures that permit American Queen to unilaterally select the arbitrator or list of arbitrators. *See Beltran v. AuPairCare, Inc.*, 907 F.3d 1240, 1257 (10th Cir. 2018) (explaining that a substantively identical provision amounts to a unilateral selection of the arbitrator because nothing prevents the company from selecting a provider with one arbitrator or a pool of biased arbitrators). Provisions allowing one party to unilaterally select the arbitrator or otherwise providing an unfair procedure for selecting arbitrators are unconscionable and unenforceable. *See McMullen v. Meijer, Inc.*, 355 F.3d 485, 494 (6th Cir. 2004) ("[Clause] grants one party to the arbitration unilateral control over the pool of potential arbitrators. This procedure prevents [this arbitration system] from being an effective substitute for a judicial forum because it inherently lacks neutrality."); *Hudson v. Chicago Tchrs. Union Loc. No. 1*, 743 F.2d 1187, 1195 (7th Cir. 1984), *aff'd*, 475 U.S. 292 (1986) (where arbitrator was unilaterally selected by

34

the union from a list of 50 potential arbitrators, arbitrator not independent or neutral) (Posner, J.).[10]

American Queen's arbitration agreement allows it unilateral, unfettered discretion to select any arbitration forum—and by extension its rules and pools of arbitrators. That provision's indefiniteness means that this Court cannot compel arbitration as a matter of Indiana specific performance law; the lack of notice as to arbitral procedures means no agreement was formed or is enforceable; and, at a minimum, the term is unconscionable.

### 2. The waiver of Rodgers-Rouzier's FLSA rights is invalid.

The agreement's requirement that claims be filed within six months is unenforceable because it strips workers of their substantive rights under the FLSA, and those rights are not waivable. *See Jewell Ridge Coal Corp. v. Loc. No. 6167,*

---

[10] While there may not be on-point Indiana law, courts overwhelmingly decline to enforce provisions that give one party control over the selection of the arbitrator. *See, e.g.*, *Trout v. Organizacíon Mundial de Boxeo, Inc.*, 965 F.3d 71, 79 (1st Cir. 2020) (drafter control over arbitrator selection unenforceable); *Walker*, 400 F.3d at 385 (where company had control over arbitral forum and forum controlled arbitrator pools, provision unenforceable); *Murray v. United Food & Com. Workers Int'l Union*, 289 F.3d 297, 303 (4th Cir. 2002) (employer control over arbitrator selection unconscionable); *Hooters*, 173 F.3d at 940 (employer control over pool of arbitrators amounted to breach of contract); *Davis v. Glob. Client Sols., L.L.C.*, 765 F. Supp. 2d 937 (W.D. Ky. 2011) (drafter control over arbitrator selection unconscionable); *Sonic-Calabasas A, Inc. v. Moreno*, 311 P.3d 184, 207 (Cal. 2013) (same); *Brown v. MHN Gov't Servs., Inc.*, 306 P.3d 948 (Wash. 2013) (drafter control over pool of arbitrators unconscionable); *Bd. of Educ. of Berkeley Cnty. v. W. Harley Miller, Inc.*, 236 S.E.2d 439, 443 (W. Va. 1977) (drafter's control over selection of arbitrators is "classic rabbits and foxes situation" and "inherently inequitable and unconscionable because in a way it nullifies all the other provisions of the contract"); *Ditto v. RE/MAX Preferred Properties, Inc.*, 861 P.2d 1000 (Okla. Civ. App. 1993) (one party control over selection of arbitrators unenforceable).

*United Mine Workers of Am.*, 325 U.S. 161, 167 (1945) (holding FLSA rights not waivable by contract). Where federal statutes creating rights and remedies include a limitations period, that limitations period is typically a substantive right that cannot be waived in advance. *See Davis v. Mills*, 194 U.S. 451, 454 (1904). The FLSA is such a statute, and a contract clause purporting to waive its limitations period is unenforceable, full stop—regardless of whether such a clause is part of an arbitration agreement and regardless of whether state law would permit such a waiver.

The FLSA, enacted in 1938, provides that an employer who violates the FLSA's minimum wage or overtime requirements must pay the affected employee "the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and [] an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). A plaintiff seeking to recover illegally withheld wages under the FLSA must file their claim within two years of the accrual of the cause of action, or within three years if the violation was willful. *Id.* § 255(a). A new cause of action accrues at each regular payday following the work period for which damages are sought. *Angulo v. Levy Co.*, 568 F. Supp. 1209, 1215 (N.D. Ill. 1983), *aff'd sub nom. Flores v. Levy Co.*, 757 F.2d 806 (7th Cir. 1985). Because shortening the statute of limitations would reduce the liquidated damages available to a suing employee, the limitations period is a substantive right. Where a limitations period operates to reduce a defendant's liability and is specific to a right created by a statute, it is substantive. *Davis*, 194 U.S. at 454.

36

The Supreme Court made clear, not long after the FLSA was enacted, that the rights created by the statute cannot be waived by an employee as part of an employment agreement. *Jewell Ridge*, 325 U.S. at 167 ("Any custom or contract falling short of that basic policy, like an agreement to pay less than the minimum wage requirements, cannot be utilized to deprive employees of their statutory rights." (citation omitted)). The Court held that an employee may not waive either the FLSA-created right to receive minimum and overtime wages or the statute's award of liquidated damages, *i.e.*, back pay. *Brooklyn Savings*, 324 U.S. at 707. A shortened contractual statute of limitations limits the period for which an employee can seek liquidated damages, thus capping statutory damages in contravention of the statute, and is squarely prohibited under *Brooklyn Savings*. Permitting employers to impose contracts waiving FLSA rights on employees would have defeated the purpose of the FLSA, which was to create a federal minimum wage, including overtime, and provide for back pay to cheated employees. *Id.* at 707-08.

Applying this precedent to a modern employment agreement limiting the statute of limitations to six months—as American Queen's does here—the Sixth Circuit unsurprisingly held that such a contractual limitation was an invalid waiver of the employee's FLSA rights. *Boaz v. FedEx Customer Info. Servs., Inc.*, 725 F.3d

37

603, 606-07 (6th Cir. 2013).[11] There is no reason for this Court to reach a different conclusion here.[12]

That the shortened limitations period happens to be in American Queen's arbitration agreement is irrelevant. The provision is categorically invalid and unenforceable under the FLSA whether it appears as part of an arbitration agreement or not. *See Viking River*, 142 S. Ct. at 1919 ("An arbitration agreement thus does not alter or abridge substantive rights[.]"). *See* A31 (distinguishing cases because they addressed the question under the federal effective vindication doctrine).[13] Rather, the only relevant fact is that Congress created a substantive right that cannot be waived, and the contract purports to waive that unwaivable right.

---

[11] While appellate decisions are scant, perhaps because the Supreme Court precedent is clear, district courts have held that the FLSA statute of limitations cannot be waived in an employment agreement. *See Castellanos v. Raymours Furniture Co., Inc.*, 291 F. Supp. 3d 294, 299-300 (E.D.N.Y. 2018); *Mazurkiewicz v. Clayton Homes, Inc.*, 971 F. Supp. 2d 682, 689-91 (S.D. Tex. 2013); *Taylor v. Am. Income Life Ins. Co.*, No. 1:13CV31, 2013 WL 2087359, at *3 (N.D. Ohio May 14, 2013); *Pruiett v. W. End Rests.*, LLC, No. 3:11–00747, 2011 WL 5520969, at *5 (M.D. Tenn. Nov. 14, 2011); *Hackler v. R.T. Moore Co.*, No. 2:17–cv–262–FtM–29MRM, 2017 WL 6535856, at *2-4 (M.D. Fla. Dec. 21, 2017).

[12] *Taylor v. Western & Southern Life Ins. Co.*, 966 F.2d 1188 (7th Cir. 1992), is not to the contrary. There, the Court enforced a contractually shortened limitations period for a federal statutory claim, but, critically, the federal statute did not include its own statute of limitations and borrowed limitations periods from state law. *Id.* at 1205.

[13] The district court erroneously characterized Rodgers-Rouzier's authority as being grounded in the federal effective vindication doctrine—but she cited *Boaz*, which is not an arbitration case. Dkt 149, at 14-15. Regardless, the Supreme Court's effective vindication cases are focused on the federal statute providing the cause of action, rather than the specific arbitration statute at issue. *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627 (1985) (focusing on whether "controversies implicating statutory rights are suitable for arbitration"). The

Even if such a shortened limitations period would be enforceable under Indiana arbitration law, it remains invalid as a matter of federal labor law. Under the Supremacy Clause, federal law prevails.

### 3. The unenforceable provisions cannot be severed.

For the reasons laid out in Part II.B.1, *supra*, a court need not conduct a severability analysis at all—it can hold that arbitration cannot be compelled, full stop. However, even if a term-by-term analysis were appropriate, the unenforceable provisions should not be severed, and arbitration should not be compelled.

Arbitration should not be compelled because the agreement is imbued with multiple unenforceable provisions. Severance is inappropriate where there are multiple unconscionable provisions because they "operate in concert to eliminate any realistic possibility of relief," and merely severing unenforceable provisions fails to rectify the fundamental unfairness of subjecting parties to such terms. *McKee v. AT & T Corp.*, 191 P.3d 845, 861 (Wash. 2008); *see Torrance v. Aames Funding Corp.*, 242 F. Supp. 2d 862, 876 (D. Or. 2002); *Vasquez-Lopez v. Beneficial Or., Inc.*, 152 P.3d 940, 953-54 (Or. Ct. App. 2007).

Further, permitting drafters to compel arbitration where they imposed multiple unenforceable arbitration provisions incentivizes drafters to continue to include unenforceable provisions, which can deter parties from bringing claims. *Id.* at 954 n.7; *see McKee*, 191 P.3d at 861 ("[T]he dominant party has nothing to lose by

---

effective vindication doctrine is not exclusive to the FAA but applies wherever arbitration is invoked for a federal statutory claim.

inserting one-sided, unconscionable provisions."). Indeed, the Restatement explains that "a court will not aid a party who has taken advantage of his dominant bargaining power to extract from the other party a promise that is clearly so broad as to offend public policy by redrafting the agreement so as to make a part of the promise enforceable." Restatement (Second) of Contracts § 184 cmt. b (1981); *Brumley v. Commonwealth Bus. Coll. Educ. Corp.*, 945 N.E.2d 770, 777 (Ind. Ct. App. 2011) (quoting Restatement for the principle that a court may invalidate an entire arbitration contract when some provisions are unconscionable).

These principles apply regardless of whether the text of the agreement invites severability, as American Queen's agreement does. To hold otherwise would allow companies to avoid the consequences of riddling their agreements with unenforceable provisions—and, as a result, deter employees and others from seeking to enforce their rights. *See Summers v. Crestview Apartments*, 236 P.3d 586, 593 (Mont. 2010); *Baierl v. McTaggart*, 629 N.W.2d 277, 285 (Wis. 2001); *see also* Charles A. Sullivan, *The Puzzling Persistence of Unenforceable Contract Terms*, 70 Ohio St. L.J. 1127, 1175 (2009) ("[I]t seems likely that the low level of risk in insisting on invalid terms results in many thousands of contracts containing such terms, contracts that will have adverse real world effects on their signatories[.]").

For these reasons, the unenforceable provisions of American Queen's arbitration agreement should not be severed, and arbitration should not be compelled.[14]

### III. The 127 Opt-In Plaintiffs Are Parties to this Litigation, and this Court Has Jurisdiction to Hold as Such.

This Court must reach the question whether it has jurisdiction over the Opt-In Plaintiffs' appeal and, if so, whether the Opt-Ins Plaintiffs are parties regardless of whether it affirms the district court's order compelling Rodgers-Rouzier's claims to arbitration. The Opt-In Plaintiffs' appeal does not hinge on the arbitration determination because American Queen has never moved to compel arbitration of the Opt-In Plaintiffs' claims, the district court has not resolved the dispute over the sufficiency of the evidence that they entered into arbitration agreements, and it is undisputed that a handful of the Opt-In Plaintiffs did not enter into arbitration agreements with American Queen. See Dkt. 144, at 34; Dkt. 149, at 2-3. Therefore, if this Court holds—as it should—that they are parties, the Opt-In Plaintiffs' claims will proceed in the district court to the next stage of litigation. *See Coan v. Nightingale Home Healthcare, Inc.*, No. 1:05-CV-0101-DFH-TAB, 2006 WL 1994772, at *2 (S.D. Ind. July 14, 2006) (Hamilton, J.).

---

[14] The district court focused its severability analysis on cases in which the agreement designated an unavailable forum and whether the selection of that forum was integral to the agreement. A25-A29. The issue here is not that the forum is unavailable, but rather that American Queen can unilaterally pick which one to use.

41

**A. This Court has jurisdiction to decide whether the Opt-In Plaintiffs are parties.**

Individuals, like the Opt-In Plaintiffs, have the right to appeal final orders holding they are not parties to the litigation. This Court regularly adjudicates appeals of final orders denying party status. *See, e.g.*, *Ali v. City of Chicago*, 34 F.4th 594, 599 (7th Cir. 2022) (holding that the Court had jurisdiction to review final denial of motion to intervene and analyzing whether individual should have been permitted to be a party); *Illinois v. City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019) (same).

Courts also consider whether an appellant was properly a member of a class or collective action below, and therefore a party. For example, in *Douglas v. Western Union Co.*, 955 F.3d 662, 664 (7th Cir. 2020), an objector to a class settlement sought to appeal the settlement's approval. But she did not appeal the district court's holding that she was not a member of the class. While this Court lacked appellate jurisdiction over her challenge to the settlement because she was not a party, this Court explained that she should have appealed the district court's ruling that she was not a party. *Id.* at 664-65. If she had appealed the party-status ruling, this Court would have had appellate jurisdiction to determine that question, and if she was a party, it could have reached her objections to the settlement.

Similarly, in *Devlin v. Scardelletti*, 536 U.S. 1, 7 (2002), the Supreme Court addressed the question whether an unnamed class member was a party to the litigation. The Fourth Circuit had held that because the unnamed member had not sought to intervene, he was not a party and could not appeal approval of the class

settlement. *Id.* at 6. Despite the Fourth Circuit's holding, the Supreme Court had appellate jurisdiction to decide the question of whether he was a party. *Id.* at 7. Appellate jurisdiction over the Opt-In Plaintiffs' contention that they were parties below should operate no differently here than in *Devlin*. As the unnamed class member could in *Devlin*, the Opt-In Plaintiffs can appeal a final decision that they are not parties even if that decision did not take the form of a denial of a motion to intervene.

The Opt-In Plaintiffs appeal from the district court's final judgment holding that the Opt-In Plaintiffs were not parties to the district court litigation. The district court expressly and unequivocally held that the Opt-In Plaintiffs lacked party status and dismissed the case in its entirety. A33-A34.

American Queen nevertheless contends the district court's final judgment was not a final judgment from which the Opt-In Plaintiffs can appeal, relying on the Third Circuit's decision in *Halle v. West Penn Allegheny Health System, Inc.*, 842 F.3d 215 (3d Cir. 2016). There, members of the putative collective action filed opt-in notices before the district court dismissed the collective claims as barred by issue preclusion and dismissed the claims of the opt-in plaintiffs without prejudice. The named plaintiff later accepted an offer of judgment, and his individual claims were dismissed as well. Opt-in plaintiffs sought to appeal the decision dismissing the collective claims as issue precluded. The Third Circuit held that the order dismissing the collective claims was not a final appealable order for purposes of 28 U.S.C. § 1291, and because that order was equivalent to a decertification order, the opt-in plaintiffs ceased to be

43

parties or have any ongoing legal interest in the case at that time, therefore, could not appeal from the final judgment dismissing the named plaintiff's claims. *Id.* at 227-29.

*Halle* is distinguishable because, here, whatever party status the Opt-In Plaintiffs had was not extinguished until the district court's final judgment, and, unlike in *Halle*, they are not seeking review of an earlier, interlocutory decision. Rather the Opt-In Plaintiffs are seeking review of the final judgment that held they are not parties. A78-A79. *See Ali*, 34 F.4th at 599. And, to the extent *Halle* stands for the proposition that opt-ins cannot appeal decertification orders, that is in direct conflict with this Court's decision in *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 877 (7th Cir. 2012).

While *Halle* also recognized that dismissals without prejudice are often not appealable because they are not adjudications on the merits, the application of that principle here would conflict with this Court's precedents. This Court has explained that dismissals without prejudice are appealable final judgments "when the district court makes it clear that it is finished with the case once and for all." *Ennenga*, 677 F.3d at 772 (cleaned up). Here, the district court made clear it was finished with the case and would not entertain further litigation: It left nothing further for Rodgers-Rouzier to do in court—and (erroneously) did not consider the Opt-In Plaintiffs to have ever been a part of the case in the first place. *See* A34.

Because the district court issued a final order determining the Opt-In Plaintiffs are not parties to the litigation, this Court has appellate jurisdiction over the narrow question whether that final order was in error.

### B. The Opt-In Plaintiffs are parties to this litigation under the plain text of the FLSA, and holding otherwise would make this Circuit an outlier.

Individuals who have opted-in to an FLSA collective action are parties even absent conditional certification. Because the Opt-In Plaintiffs opted into the proceedings below, they are party-plaintiffs, and the district court erred in holding otherwise. The conclusion that the Opt-In Plaintiffs are parties is compelled by the text of the statute and aligns with every federal court of appeals to have squarely addressed the question. This Court should follow those well-reasoned decisions.

Section 216(b) of the FLSA establishes the framework for collective actions brought under the statute. It provides that an action against an employer to recover unpaid wages may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). Unlike a class action, in which individuals are members of the class unless they opt out, in a FLSA collective action, employees other than the named employee only become part of the proceedings by affirmatively opting in. *See Espenscheid*, 688 F.3d at 874. Opt-ins "become parties to a collective action only by

45

filing written consent with the court." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013).

In practice, when there is a purported FLSA collective action, the typical procedure is for the named plaintiff to seek conditional certification, also known as "Step One" certification, to proceed as a collective action so that notice can be provided to potential opt-in plaintiffs, informing them of the opportunity to opt in. *Id.* Later, following discovery about the extent to which the employees' claims are sufficiently similar, a court can reevaluate the question whether a collective action is appropriate and may "decertify" the collective action. *See, e.g.*, *Espenscheid*, 688 F.3d at 877; *see also Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100-02 (9th Cir. 2018) (describing the process, explaining that it has no basis in the text of § 216(b), and explaining that it inartfully borrows terminology from class actions); *Mickles v. Country Club, Inc.*, 887 F.3d 1270, 1276-77 (11th Cir. 2018) (describing the process as a useful, but not required, case management tool). The text of § 216(b) makes no reference to this two-step conditional certification process, and the process is not statutorily required for employees to opt in to an FLSA action. *See Campbell*, 903 F.3d at 1101.

Here, consistent with typical practice, Rodgers-Rouzier moved for conditional certification, which would have resulted in notice to a defined class of American Queen service employees. Dkt. 106, Dkt. 107. American Queen opposed conditional certification on the basis that its employees are bound by agreements to arbitrate individually, Dkt. 117, at 19-24, but failed to provide the district court with sufficient

evidence of the arbitration agreements, Dkt. 138, at 5-6. The district court denied Rodgers-Rouzier's motion for certification without prejudice, inviting her to re-file the motion once American Queen had submitted sufficient evidence of the arbitration agreements. *Id.* at 6. Nevertheless, 127 American Queen employees opted into the lawsuit both before and after the certification motion. American Queen eventually submitted evidence to the district court that most, but not all, of the members of the purported collective action had entered into arbitration agreements. Dkt 144. Rodgers-Rouzier disputed the sufficiency of the evidence, Dkt 149, at 7-8, but the district court dismissed the case before resolving that dispute.

This Court has never squarely addressed the question presented by these facts: whether, under § 216(b), employees who opt in to the collective action are parties to the litigation where there has been no conditional certification, nor any other determination on the merits of whether the employees can proceed collectively. But this Court has recognized that opting in by filing consent does accord some level of party-status because the "the claims of potential members of an FLSA collective action are not tolled until they file opt-in notices." *Hollins v. Regency Corp.*, 867 F.3d 830, 834 (7th Cir. 2017); *accord Smith v. Pro. Transp., Inc.*, 5 F.4th 700, 703 (7th Cir. 2021); *see also Koch v. Jerry W. Bailey Trucking, Inc.*, 51 F.4th 748, 751 (7th Cir. 2022) (a collective action under the FLSA includes only employees who affirmatively opt into the collective); *O'Toole v. Sears Roebuck & Co.*, No. 11 C 4611, 2014 WL 1388660, at *2 (N.D. Ill. Apr. 10, 2014) ("[U]nlike class members in a Rule 23 class action, opt-in plaintiffs in a collective action have affirmatively decided to become

47

plaintiffs and thus are full parties."); *Medina v. Happy's Pizza Franchise, LLC*, No. 10 C 3148, 2012 WL 1094353, at *5 (N.D. Ill. Apr. 2, 2012) ("Every opt-in plaintiff is a party to the case.").

Circuits that have squarely addressed the question have unanimously held, consistent with the text of the FLSA, that opt-ins are party-plaintiffs regardless of whether there has been a conditional certification. *Waters v. Day & Zimmerman NPS, Inc.*, 23 F.4th 84, 89 (1st Cir. 2022), *cert. denied* 142 S. Ct. 2777 ("[O]pt-in plaintiffs become parties to the action without regard to conditional certification."); *Mickles*, 887 F.3d at 1278 ("The plain language of § 216(b) supports that those who opt in become party plaintiffs upon the filing of a consent and that nothing further, including conditional certification, is required.").

Additional circuits that have either not addressed the question expressly or in a different context have nevertheless made clear that opt-ins are parties on par with the named plaintiffs regardless of certification status. *Campbell* conducted a particularly thorough analysis, explaining that there is no statutory basis for the conditional certification process and holding, "[t]he FLSA leaves no doubt that every plaintiff who opts in to a collective action has party status. Under the FLSA, an opt-in plaintiff's action is deemed 'commenced' from the date her opt-in form is filed with the district court. From that point on, there is no statutory distinction between the roles or nomenclature assigned to the original and opt-in plaintiffs. The FLSA does not use the terms 'original' or 'opt-in' plaintiff at all; the FLSA instead refers to *all* plaintiffs in a collective action as party plaintiff[s]." 903 F.3d at 1104 (citations

omitted) (emphasis in original). *See Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754 (4th Cir. 2011) (treating claims of opt-in plaintiffs on par with named plaintiffs where there was no conditional certification). *See also Vallone v. CJS Sols. Grp., LLC*, 9 F.4th 861 (8th Cir. 2021) (analyzing opt-ins as party-plaintiffs before reaching the merits of conditional certification); *Canady v. Anthem Cos.*, 9 F.4th 392, 402-03 (6th Cir. 2021) (same and explaining "all plaintiffs in an FLSA collective action must affirmatively choose to 'become parties' by opting into the collective action. Once they opt in, these plaintiffs become 'party plaintiff[s],' 29 U.S.C. § 216(b), enjoying 'the same status in relation to the claims of the lawsuit as do the named plaintiffs[.]'" (citations omitted)).

American Queen's assertion that there is "substantial support" outside this Circuit for the district court's holding that, absent conditional certification, opt-ins are not party plaintiffs, is an exaggeration at best. *See* App. Dkt. 9, at 6 n.1. American Queen cites the Third Circuit's decision in *Halle*, but *Halle* stated expressly that question was an open one and did not reach it. *Halle*, 842 F.3d at 225 ("This prompts the as-yet unanswered question of what 'party status' means in a collective action, particularly before a district court has considered whether those who have filed consent forms are in fact 'similarly situated' to the named plaintiff for purposes of § 216(b)."); *see Mickles*, 887 F.3d at 1277 n.7 (considering *Halle* to have left the

question open).[15] And while there are two out-of-circuit unpublished district court decisions holding that opt-ins are not parties absent conditional certification, that authority is hardly "substantial," particularly in light of the contrary appellate authority. *See Cooper v. Terminix Int'l Co.*, No. 4:17-CV-3671, 2018 WL 1998973, at *6 (S.D. Tex. Apr. 11, 2018); *Beery v. Quest Diagnostics, Inc.*, No. 12-CV-00231 KM MCA, 2013 WL 3441792, at *1 (D.N.J. July 8, 2013).

This Court should follow the well-reasoned decisions of its sister circuits and hold that, under the plain language of § 216(b), opt-ins are party-plaintiffs even if there has been no conditional certification. Simply put, there is no certification requirement in the text of the statute for opt-ins to become parties. *See Waters*, 23 F.4th at 89 ("Conditional certification cannot be the cornerstone of party status because it is not a statutory requirement; rather, certification is a product of interstitial judicial lawmaking or ad hoc district court discretion . . . nothing in section 216(b) expressly compels it." (quotation marks omitted)). The statute provides that an employee may bring a collection action against an employee for unpaid wages, and "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). "This provision makes clear that in collective

---

[15] *Halle* stated that the opt-ins "were no longer 'parties' to the case after they were dismissed without prejudice" and proceedings continued as to the named plaintiff, but did not rule whether opt-ins were parties prior to their dismissal. 842 F.3d at 229.

actions, opt-in plaintiffs become parties to the proceedings when they give 'consent in writing to become such a party and such consent is filed in the court.'" *Waters*, 23 F.4th at 89. That is all the statute requires.

That the proper reading of § 216(b) is that opt-ins become party-plaintiffs at the time they file their consents with the court is reinforced by other provisions of the FLSA. In determining when an action "commences" for statute of limitations purposes, § 256 explains that the action commences for an opt-in party plaintiff at the time the party opts-in to the collective action. 29 U.S.C. § 256; *see Campbell*, 903 F.3d 1104. "From that point on, there is no statutory distinction between the roles or nomenclature assigned to the original and opt-in plaintiffs." *Id.* Indeed, § 256(a) refers to both named and opt-in plaintiffs as "party plaintiff[s]" and contemplates that opt-in plaintiffs become party plaintiffs at the time the complaint is filed by the named plaintiffs if written notice is provided to the court that same day. Requiring conditional certification—which necessarily could not occur "on the date when the complaint is filed"—for opt-ins to be parties is flatly contradictory to the scenario contemplated in § 256(a).

While opting-in creates party status, conditional certification, by contrast, "does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees." *Genesis*, 569 U.S. at 75; *see Mickles*, 887 F.3d at 1278. *See Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010) ("Thus 'certification' is neither necessary nor sufficient for the existence of a representative

action[.]"). In other words, it has no legal effect as to whether a collective action may proceed, but may be a useful "case management" tool for district courts to employ in "appropriate cases." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169, 174 (1989).

Section 216(b) does require that employees be similarly situated to proceed collectively. Typically, after some discovery or other proceedings have taken place, a defendant will move to "decertify" the collective action on the basis that the named, opt-in, and potential plaintiffs are not sufficiently similarly situated to proceed together. *Espenscheid*, 688 F.3d at 877; *see Campbell*, 903 F.3d at 1101. This terminology, borrowed from class actions, is imperfect in this context, because collective actions are not certified in the way that class actions are. *Id.* Decertification is more akin to a motion to dismiss the collective claims. If those collective claims are so dismissed, the opt-in plaintiffs are also dismissed and cease to be parties to the action at that time. *See Espenscheid*, 688 F.3d at 877; *Mickles*, 887 F.3d at 1278.

Accordingly, the Opt-In Plaintiffs here became party-plaintiffs when they filed their notice of consent with the court. Because the district court in this case never determined that the plaintiffs' claims are insufficiently similar to proceed collectively, the Opt-In Plaintiffs remained parties to the action below.

None of this Court's cases compel a different result. *Espenscheid*, 688 F.3d at 877, and *Alvarez v. City of Chicago*, 605 F.3d 445, 450 (7th Cir. 2010), relied on by the district court, both addressed situations in which the collective action had been

decertified. Those cases do not speak to the question whether opt-in plaintiffs have party status *before* a court makes that determination.

In *Hollins,* 867 F.3d at 833, the district court did not accept the consent forms of the individuals who attempted to opt in and, therefore, they were not parties to the action. That is not the case here, where the district court expressly recognized that the Opt-In Plaintiffs had opted in, including ordering American Queen to submit evidence of the arbitration agreements the Opt-In Plaintiffs allegedly signed. Dkt. 141; *see* A33.

Because the Opt-In Plaintiffs here have full party status, their claims must be permitted to proceed in district court regardless of whether the name plaintiff's claims can be compelled to arbitration.

## CONCLUSION

For these reasons, this Court should reverse the district court's order compelling arbitration of Rodger-Rouzier's claims and dismissing the claims of Rodgers-Rouzier and the 127 Opt-In Plaintiffs, and remand for further proceedings.

August 29, 2023                           Respectfully submitted,

/s/ Leah M. Nicholls
Leah M. Nicholls
Matthew C. Clifford
PUBLIC JUSTICE
1620 L Street NW
Suite 630
Washington, DC 20036
Tel: (202) 797-8600
Fax: (202) 232-7203
lnicholls@publicjustice.net
mclifford@publicjustice.net

53

Douglas M. Werman
Maureen A. Salas
Sarah J. Arendt
WERMAN SALAS P.C.
77 West Washington Street
Suite 1402
Chicago, IL. 60602
Tel: (312) 419-1008
Fax: (312) 419-1025
dwerman@flsalaw.com
msalas@flsalaw.com
sarendt@flsalaw.com

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Local Rule 32(c) because this brief contains 13,991 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), as calculated by Microsoft Word 2016. This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a) and Local Rule 32(b) because this brief has been prepared in proportionally spaced typeface using 12-point Century Schoolbook font.

/s/ Leah M. Nicholls
Leah M. Nicholls

August 29, 2023

## CERTIFICATE OF SERVICE

I certify that on August 29, 2023, I electronically filed the foregoing Appellants' Opening Brief via the CM/ECF system and served all parties or counsel via CM/ECF system.

/s/ Leah M. Nicholls
Leah M. Nicholls

## CIRCUIT RULE 30(d) STATEMENT

All the materials required by Circuit Rule 30(a) and (b) are included within the separate appendix. All the materials required by Circuit Rule 30(a) are included in the short appendix attached to this brief.

/s/ Leah M. Nicholls
Leah M. Nicholls

No. 23-1812

In the United States Court of Appeals
for the Seventh Circuit

———————————————

MARY RODGERS-ROUZIER, ET AL.
*Plaintiffs-Appellants,*

v.

AMERICAN QUEEN STEAMBOAT OPERATING CO. AND HMS GLOBAL MARITIME, LLC
*Defendants-Appellees.*

———————————————

On Appeal from the United States District Court for the
Southern District of Indiana, New Albany Division
No. 4:20-cv-00004-SEB-KMB, Hon. Sarah Evans Barker

———————————————

**APPELLANTS' SHORT APPENDIX**

———————————————

Leah M. Nicholls
   *Counsel of Record*
Matthew C. Clifford
PUBLIC JUSTICE
1620 L Street NW
Suite 630
Washington, DC 20036
Tel: (202) 797-8600
Fax: (202) 232-7203
lnicholls@publicjustice.net
mclifford@publicjustice.net

Douglas M. Werman
Sarah J. Arendt
WERMAN SALAS P.C.
77 West Washington Street
Suite 1402
Chicago, IL 60602
Tel: (312) 419-1008
Fax: (312) 419-1025
dwerman@flsalaw.com
sarendt@flsalaw.com

*Counsel for Appellants*

## TABLE OF CONTENTS

| Dkt # | Filing Date | Document | Page |
|-------|-------------|----------|------|
| 165 | 03/31/2023 | Order Granting Defendants' Renewed Motion to Compel Arbitration and Dismissing the Case | A1 |
| 166 | 03/31/2023 | Final Judgment | A36 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| MARY RODGERS-ROUZIER on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 4:20-cv-00004-SEB-KMB |
| AMERICAN QUEEN STEAMBOAT OPERATING COMPANY, LLC, HMS GLOBAL MARITIME LLC, | ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER GRANTING DEFENDANTS' RENEWED MOTION TO
COMPEL ARBITRATION AND DISMISSING THE CASE**

Now before the Court is Defendants' Renewed Motion to Dismiss Plaintiff's Amended

Complaint or, in the Alternative, to Stay Litigation Pending Individual Arbitration.[1]

Defendants have waived their argument that the case should be dismissed for improper

venue under Rule 12(b)(3), but they have not waived their contractual right to compel

arbitration under Indiana law. We grant Defendants' motion to compel arbitration under

Indiana law, finding that Indiana precedent warrants a dismissal when, as here, all issues

are required to be submitted to arbitration. Accordingly, we must dismiss the case but do

so without prejudice.

---

[1] Also pending before the Court are Defendants' Submission Establishing the Existence and Validity of Arbitration Agreements [Docket No. 144], Plaintiff's Motion for Equitable Tolling [Docket No. 148], and Plaintiff's Motion for Leave to File a Surreply [Docket No. 155]. Because we ultimately grant the motion to compel arbitration, and subsequently dismiss this case without prejudice, we deny these three motions as moot.

1

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On June 8, 2020, Plaintiff Mary Rodgers-Rouzier, individually and on behalf of those
similarly situated, filed her Amended Complaint, alleging that Defendants American
Queen Steamboat Operating Company, LLC, and HMS Global Maritime LLC violated
the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203 *et seq.*, by failing to pay her for
the hours she worked in excess of forty per week. As the Court has previously found, Ms.
Rodgers-Rouzier's Amended Complaint alleges the following facts, which we accept as
true at this juncture:

> Defendants, owners and operators of a river cruise line, oversee the voyages
> of multiple cruise boats traveling along various rivers in the United States,
> including the Mississippi, Tennessee, and Ohio Rivers. Ms. Rodgers-Rouzier
> has been employed by Defendants as a bartender since February 2015. In this
> role, Ms. Rodgers-Rouzier's primary duties include preparing and serving
> drinks to guests and maintaining a clean and fully stocked bar area. She is
> charged with knowing Defendants' bar menu, drink recipes, and serving
> procedures. In sum, Ms. Rodgers-Rouzier's "job duties as a bartender for
> Defendants are essentially the same as a bartender who works in a bar or
> restaurant on land." She is not responsible for the maintenance, upkeep, or
> safety of any equipment related to the operations of the cruise boats, nor does
> she provide any engineering, or docketing support to the boats or any safety-
> related services to guests.

> In her position as a bartender, Ms. Rodgers-Rouzier works six-week tours on
> one of Defendants' vessels, followed by two weeks off. During her weeks on
> board the vessel, Ms. Rodgers-Rouzier works seven days a week, averaging
> twelve hours of work per day. Her compensation includes a daily rate as well
> as a percentage of a service fee charged to guests. Ms. Rodgers-Rouzier is
> not paid overtime for any hours she works during a week in excess of forty.

> Ms. Rodgers-Rouzier's lawsuit alleges that Defendants have misclassified
> her as exempt from overtime compensation, in violation of the FLSA's
> overtime provisions. She also advances this alleged violation of the FLSA on
> behalf of other "similarly situated persons," including "all current employees,
> laundry attendants, and housekeepers."

2

Docket No. 97, at 2−3. "As a condition of her employment, Ms. Rodgers-Rouzier entered into an employment agreement with Defendants, which contained various provisions providing for arbitration of disputes between Ms. Rodgers-Rouzier and Defendants." *Id.* at 3. The Arbitration Agreement states, in pertinent part, as follows:

<u>Employee Agrees to Arbitrate.</u>

1.  In exchange for employment and/or continued employment, I ("Employee") agree that I will settle any and all claims, disputes or controversies arising out of or relating to my candidacy for employment, employment and/or cessation of employment with [HMS and/or American Queen] … exclusively by final and binding arbitration before a single, neutral Arbitrator. Claims for unemployment benefits, workers compensation or disability benefits or claims under the National Labor Relations Act are expressly excluded.

2.  <u>Conduct of the Arbitration.</u>

    The arbitration shall be conducted under the rules and procedures of the American Arbitration Association, Judicial Arbitration and Mediation Services or another arbitration service selected by the Company.

    [ . . . ]

4.  <u>Arbitration brought by Employee within Six Months.</u>

    I further agree not to commence any claim hereunder more than six (6) months after the date I knew or should have known of the facts giving rise to the claim, and I agree to waive any statute of limitations to the contrary.

    [ . . . ]

5.  <u>Company Agrees to Arbitrate.</u>

    As additional consideration to this Agreement, excluding criminal matters and claims to enforce restrictive covenants (non-competition, non-

3

solicitation, confidentiality, non-pirating, etc.) with the Employee, the
Company agrees to submit any and all claims against the Employee to
arbitration under the terms contained in Paragraphs 1 through 4 above.

6. <u>Miscellaneous</u>

This Agreement and the applicability/construction of any arbitration decision
shall be governed by the Federal Arbitration Act. The provisions of this
Agreement shall be severable. If any portion of this Agreement is held to be
invalid or unenforceable, it shall not affect the remaining portions of this
Agreement. This Agreement may be modified by a court or an arbitrator to
render it enforceable.

[ . . . ]

*Id.* (quoting Docket No. 76-1, Ex. 1). On June 30, 2020, Defendants filed their Motion to

Dismiss the Amended Complaint or, in the Alternative, to Stay Litigation Pending

Individual Arbitration, arguing that the parties' arbitration employment agreement

mandated the dismissal of Ms. Rodgers-Rouzier's claims under the Federal Arbitration

Act ("FAA").[2] Defendants argued that the Arbitration Agreement "prohibits Ms.

Rodgers-Rouzier from pursuing her FLSA claims in this court." *Id.* at 4. "Alternatively,

Defendants request[ed] an order staying Plaintiffs' collective action claims pending the

completion of Ms. Rodgers-Rouzier's personal arbitration claims." *Id.*

We ultimately denied this motion, after concluding that Ms. Rodgers-Rouzier

qualified as a "seaman" under the FAA and therefore could not be compelled to arbitrate

---

[2] Defendants' initial Motion to Dismiss the Complaint or, in the Alternative, Stay Litigation
Pending Individual Arbitration was denied as moot because it was filed prior to Ms. Rodgers-
Rouzier's submission of an Amended Complaint. Docket No. 97, at 1 n.1.

4

under this statute. *Id.* at 10. "In so ruling, we examined whether arbitration should be

compelled under the FAA and we did not consider Defendants' separate argument that

Ms. Rodgers-Rouzier may be compelled to arbitrate under state law if she is determined

to be beyond the reach of the FAA because this argument was not raised in Defendants'

motion to dismiss or the corresponding briefing and was addressed for the first time only

in Defendants' subsequent request to submit additional authority." Docket No. 138, at 2

n.2. Because the issue of enforceability under Indiana law was not properly before the

Court at that time, our order denying the initial Motion to Dismiss focused only "on the

narrow federal issue raised in Defendants' [first] motion to dismiss." *Id.*

On March 31, 2021, Ms. Rodgers-Rouzier moved for conditional certification of a

proposed collective action and notice to a defined group of "service employees," pursuant

to 29 U.S.C. § 216(b). "Defendants object[ed] to the conditional certification and notice

on the grounds that virtually all of its employees are subject to mandatory arbitration

agreements and, as a result, are contractually foreclosed from participating in this

lawsuit." *Id.* Specifically, "Defendants claim[ed] that nearly all of the Putative Collective

Members have entered into mandatory arbitration agreements subject to Indiana law and

thus should not be included in the group who would otherwise receive Plaintiff's

proposed step one notice."[3] *Id.* at 4. In other words, "Defendants' argument that the

---

[3] In ruling on Plaintiff's Motion for Step One Notice, we explained that "[t]he parties dispute
whether state or federal law governs the arbitration agreements at issue, but the parties do not
appear to contest that, if state law governs, Indiana law should apply to the extent that federal
law is inapplicable. We agree that Indiana law appears to apply here." Docket No. 138, at 4 n.3.

5

proposed collective action members have signed arbitration agreements compelling

arbitration under state law [was] now properly before us." *Id.* at 2 n.2.

In ruling on the Motion for Step One Notice, we began our analysis by explaining that

the "exemption of Ms. Rodgers-Rouzier as an exempted 'seaman' under the FAA does not

preclude a determination that state law may require Ms. Rodgers-Rouzier and other

similarly situated employees to individually arbitrate their claims pursuant to the parties'

common arbitration agreements." *Id.* at 3 (citing *Sherwood v. Marquette Transp. Co.,*

*LLC*, 587 F.3d 841, 843 (7th Cir. 2009)) (citations omitted) ("[P]rovisions for alternative

dispute resolution may be enforced as contracts under state law, even if the provisions are

outside the Federal Arbitration Act's scope."). "This is true 'even when the contract says

that the Federal Arbitration Act applies and mentions no other law—if the federal act

doesn't apply, the agreement to arbitrate remains viable, and the only question becomes

what state's law applies to the contract to arbitrate.'" *Id.* (quoting *Atwood v. Rent-A-*

*Center E., Inc.*, 2016 WL 2766656, at *3 (S.D. Ill. May 13, 2016)). "Because statutory

exemption questions relate 'to the Court's ability to employ the federal statute, and not to

the underlying arbitration agreement's validity,' we next look to the applicable state law

to determine whether the parties' arbitration agreements are valid." *Id.*

We next considered Defendants' arguments regarding the mandatory arbitration

agreements entered into by the Putative Collective Members and their validity under

Indiana law. We explained that the Seventh Circuit has provided the appropriate

analytical framework in *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1050 (7th Cir. 2020),

6

A6

"where, as here, 'a defendant opposes the issuance of notice by asserting that proposed notice recipients entered mutual arbitration agreements.'" Docket No. 138, at 5. In such circumstances, the trial court is directed to take the following specific steps:

> First, the court must determine whether a plaintiff contests the defendant's assertions about the existence of valid arbitration agreements entered by proposed notice recipients.

> If no plaintiff contests those assertions, then the court may not authorize notice to the employees whom the defendant alleges entered valid arbitration agreements.

> But if a plaintiff contests the defendant's assertions, then—before authorizing notice to the alleged "arbitration employees"—the court must permit the parties to submit additional evidence on the agreements' existence and validity.

*Id.* (quoting *Bigger*, 947 F.3d at 1050). We found that Ms. Rodgers-Rouzier had clearly contested the validity of the arbitration agreements. *Id.* "Thus, before FLSA notice can be approved and/or sent to the Putative Collective Members, *Bigger* requires a determination of the arbitration agreements' application and validity under Indiana law." *Id.*

Relying on *Bigger*, we then explained that "Defendants carry the evidentiary burden in this circumstance: '[t]he employer seeking to exclude employees from receiving notice has the burden to show, by a preponderance of the evidence, the existence of a valid arbitration agreement for each employee it seeks to exclude from receiving notice.'" *Id.* (quoting *Bigger*, 947 F.3d at 1050). At that point, however, Defendants had "submitted only the declaration from American Queen Steamboat Operating Company LLC's Vice President of Human Resources, Christina Hobbs, which states that '505 out of 516

7

A7

"service employees" (as defined by Plaintiff) that were employed in 2020 and all but one of the individuals who have filed consents in this action signed an Arbitration Agreement.'" *Id.* (quoting Docket No. 117-1, at ¶ 23). We concluded that "Ms. Hobbs's declaration is insufficient under *Bigger*, which requires more than a generalized, blanket statement that alleged arbitration agreements exist for unidentified employees." *Id.* at 5−6 (citing *Bigger*, 947 F.3d at 1051). "For each employee it seeks to exclude, Defendants must provide evidence of the individual's signed arbitration agreement to establish both its existence and validity, allowing the Court to determine whether each such agreement precludes Plaintiff from notifying the respective employee of this pending litigation." *Id.* at 6. Accordingly, we denied Ms. Rodgers-Rouzier's Motion for Step One Notice without prejudice to refiling, once the steps prescribed in our order had been accomplished. *Id.*

Thereafter, Defendants filed their Renewed Motion to Dismiss Plaintiff's Amended Complaint or, in the Alternative, to Stay Litigation Pending Individual Arbitration, arguing that the Arbitration Agreement is enforceable under Indiana law. This Renewed Motion is now before the Court for decision.

## II.   STANDARDS OF REVIEW

"An arbitration clause is simply a type of forum-selection clause . . . a motion seeking dismissal based on an agreement to arbitrate therefore should be decided under Rule 12(b)(3)." Docket No. 97, at 4 (quoting *Johnson v. Orkin*, LLC, 556 F.App'x 543, 544 (7th Cir. 2014)); *see also Faulkenberg v. CB Tax Franchise Systems, LP*, 637 F.3d 801, 806 (7th Cir. 2011) ("[W]e have held that a motion to dismiss based on a contractual

8

arbitration clause is appropriately conceptualized as an objection to venue, and hence properly raised under Rule 12(b)(3).") (internal quotations omitted). In ruling on Defendants' Renewed Motion to Dismiss, "we accept as true the well-pled allegations in the complaint." *Id.* "However, we are 'not obligated to limit [our] consideration to the pleadings [or to] convert the motion to one for summary judgment if the parties submit evidence outside the pleadings.'" Docket No. 97, at 4 (quoting *Faulkenberg*, 637 F.3d at 809−10). "It is thus appropriate for the court to consider the evidence that the parties have submitted in conjunction with their legal arguments, including the Arbitration Agreement." *Id.* (quoting *Faulkenberg*, 637 F.3d at 809−10); *see also Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (explaining that documents attached to the complaint and motions to dismiss "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.") (internal citations and quotations omitted)); *Deb v. SIRVA, Inc.*, 832 F.3d 800, 809-10 (7th Cir. 2016).

## III.    LEGAL DISCUSSION AND DECISION

In their Renewed Motion to Dismiss, Defendants argue that "the Arbitration Agreement between Plaintiff and Defendants is a valid and enforceable agreement under Indiana law and the arbitration procedures agreed to by the parties provide the exclusive remedy for the claims that Plaintiff has asserted in her Amended Complaint," and, consequently, Ms. Rodgers-Rouzier's Amended Complaint "must be dismissed and she must be compelled to utilize the procedures set forth in the Arbitration Agreement should she desire to continue pursuing her claim against Defendants." Docket No. 152, at 6. Defendants cite Indiana's strong policy favoring enforcement of arbitration agreements,

noting that the parties have entered into an enforceable arbitration agreement under Indiana law, that the agreement is not unconscionable, and that Ms. Rodgers-Rouzier's claim is covered by the agreement to arbitrate. "Alternatively, Defendants request the Court to stay Plaintiff's individual claims pending resolution of the claims in individual arbitration pursuant to the parties' Arbitration Agreement." *Id.* at 11.

In opposition, Ms. Rodgers-Rouzier argues that Defendants' Renewed Motion to Dismiss is barred by Federal Civil Procedure Rule 12(g)(2) and should not be considered on its merits because the motion is in truth an untimely motion to reconsider. Further, she contends that Defendants have waived their contractual right to insist on arbitration of a dispute, and that the Arbitration Agreement—with the FAA provision severed—cannot be enforced because it now lacks provisions covering the selection of governing law and an unambiguous selection of an arbitrator. We address the parties' respective arguments in turn below.

### A.  FEDERAL RULE OF CIVIL PROCEDURE 12(g)(2)

We begin with Ms. Rodgers-Rouzier's argument that Defendants' Renewed Motion to Dismiss is barred by Federal Civil Procedure Rule 12(g)(2). Under this rule, a party making a Rule 12 motion "must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). This rule "does carve [out] an exception that allows parties to seek dismissal at any time on the grounds referenced in Rules 12(h)(2) and (3), but those grounds—failure to state a claim for relief, failure to join a person required under Rule

10

A10

19(b), failure to state a legal defense, and lack of subject matter jurisdiction—are not

implicated here." *Johnson v. United Airlines*, 2013 WL 323404, at *2 (N.D. Ill. Jan. 25,

2013). Ms. Rodgers-Rouzier contends that Defendants failed to raise their argument that

the Arbitration Agreement can be enforced under Indiana law in their previous motions to

dismiss, and therefore their Renewed Motion to Dismiss is barred, pursuant to Rule

12(g)(2). Continuing, she maintains that "courts in this circuit regularly hold that a party

that fails to raise an available defense under Rule 12(b)(3) in a motion to dismiss is

estopped from raising that defense in a subsequent motion." Docket No. 156, at 3.

However, the cases Ms. Rodgers-Rouzier relies on for this proposition do not involve

circumstances analogous to the present case—that is, none of the cases involves a

defendant who raised an incorrect venue argument at the outset but are now identifying a

new and different body of law as the basis for such argument, which is the situation

before us here.[4]

---

[4] Ms. Rodgers-Rouzier cites only two cases from within our circuit, along with two cases from
other jurisdictions. In *Johnson v. United Airlines, Inc.*, the defendants filed a motion under Rule
12(b)(6), and after the court ruled on the Rule 12(b)(6) motion, the defendants filed a motion for
dismissal for improper venue under Rule 12(b)(3). 2013 WL 323404 at *2. The district court in
*Johnson* found that the defendants had waived their improper venue argument by not raising it
along with their initial Rule 12(b)(6), but still transferred the case for convenience pursuant to 28
U.S.C. § 1404(a). *Id.* at *2, *7. In *Killian v. Concert Health Plan*, the district court concluded
that the defendant had waived its opportunity to file a motion to dismiss under Rule 12(b)(3) for
improper venue because it failed to include these arguments in its initial Rule 12(e) motion. 2008
WL 2561218, at *1 (N.D. Ill. June 24, 2008). As for the two cases outside our circuit, they
involve defendants who failed entirely to raise a venue argument in their initial responsive
pleading. *See T.J. McDermott Transp. Co., Inc. v. Cummins, Inc.*, 2018 WL 355139, at *3
(D.N.J. Jan. 9, 2018) (involving a defendant who made a motion to strike portions of a complaint
and thereafter moved to dismiss under Rule 12(b)(3)); *Realtime Data LLC v. Carbonite, Inc.*,
2017 WL 4693970, at *1 (E.D. Tex. July 11, 2017) (involving a defendant who made a Rule

Defendants, meanwhile, cite the holding in *Scan Top Enterprise Co., Ltd. v. Winplus North America, Inc.*, 2016 WL 910502 (N.D. Ill. Mar. 9, 2016), in which the defendants initially moved to dismiss the complaint based on an arbitration clause, but "it did so pursuant to the improper rule: namely, Rule 12(b)(6) instead of Rule 12(b)(3)." *Id.* at *2 n.3. The defendants then moved to dismiss the complaint again, this time pursuant to Rule 12(b)(3), arguing that the valid arbitration clause mandated the dismissal of the lawsuit. There the court found that the defendants' "objection to venue was not waived by its failure to properly frame the issue under Rule 12(b)(3)" because the defendant did raise its objection to venue in its initial motion; it simply did so under the improper rule. *Id.* (citing *Alt. Delivery Solutions, Inc. v. R.R. Donnelley & Sons, Co.*, 2005 WL 1862631, at *4 (W.D. Tex. July 8, 2005) (holding party's venue challenge not waived where it was brought under Rule 12(b)(6) instead of Rule 12(b)(3)). We find the *Scan Top* case distinguishable from the circumstances before us here: whereas the defendant in *Scan Top* made a technical pleading error, Defendants have identified an entirely new legal basis for their improper venue argument, having lost on their initial theory that the Arbitration Agreement was enforceable under the FAA.

A closely analogous case provides persuasive guidance to us here. In *Saxon v. Southwest Airlines Co.*, the plaintiff was employed as an airport ramp supervisor for the defendant, Southwest Airlines. 2023 WL 2456382, at *1 (N.D. Ill. Mar. 10, 2023). As a

---

12(b)(6) motion to dismiss, and later moved to dismiss under Rule 12(b)(3)). We thus find Ms. Rodgers-Rouzier's reliance on these cases to be inapposite.

condition of this employment, the plaintiff signed an arbitration agreement that required

her to individually arbitrate any and all claims related to her employment with Southwest

and contained a provision stating that the arbitration agreement was governed by the

FAA. *Id.* at *1 n.1. Nonetheless, the plaintiff filed a FSLA claim in federal court on

behalf of herself and a class of similarly situated individuals. *Id.* at *1. Southwest initially

moved to dismiss under Rule 12(b)(3), or to stay the case in favor of arbitration, arguing

that the FAA required the plaintiff to arbitrate her claims and that a federal court was an

improper venue for the suit. *Id.* The plaintiff argued that she was exempt from arbitration

under Section 1 of the FAA, which provides that "nothing herein contained shall apply to

contracts of employment of seamen, railroad employees, or any other class of workers

engaged in foreign or interstate commerce." *Id.* (citing 9 U.S.C. § 1). Following

completion of discovery on the issue, the district judge ruled that the plaintiff was not

exempt and was required to arbitrate her claims. *Id.*

The plaintiff appealed that decision to the Seventh Circuit, which ultimately held that

the plaintiff qualified for the FAA exemption. *Id.* at *2 (citing *Saxon v. Sw. Airlines Co.*,

993 F.3d 492 (7th Cir. 2021)). "Upon remand, the parties filed motions to compel

arbitration, strike collective allegations, and toll the statute of limitations." *Id.* Southwest

concurrently appealed the Seventh Circuit decision to the Supreme Court, which granted

*certiorari*. In the interim, the district judge dismissed the motions with leave to refile

instanter after the Supreme Court handed down a decision in the case. In June of 2022,

the Supreme Court affirmed the Seventh Circuit's opinion in *Southwest Airlines Co. v.*

*Saxon*, 142 S. Ct. 1783, 213 L. Ed. 2d 27 (2022). One month later, the parties filed their

renewed motions in the district court. In Southwest's renewed motion to compel

arbitration, it argued that despite the Supreme Court's ruling, the plaintiff was still

required to arbitrate her claims; but Southwest now argued that arbitration was required

under the Illinois Uniform Arbitration Act. *Saxon*, 2023 WL 2456382 at *2. The plaintiff,

however, maintained that Southwest had waived the right to arbitrate under Illinois law

because Southwest did not raise this argument in its initial motion to compel arbitration.

Because Southwest originally filed its motion to dismiss under Rule 12(b)(3) to compel

arbitration under only the FAA, the district court agreed with the plaintiff that this

original motion "lack[ed] any specific request to compel arbitration under the [Illinois

Uniform Arbitration Act]." *Id.* "Therefore, had Southwest again moved to dismiss the

case pursuant to 12(b)(3), this argument would be waived." *Id.* However, as the district

court explained, "Southwest ha[d] not brought a 12(b)(3) motion," but instead it "brought

a motion to compel arbitration and stay the case under the IUAA." *Id.* Thus, as

determined by the district court, Rule 12(g) did not preclude Southwest's opportunity to

renew its motion to compel arbitration under Illinois law.

 Here, Defendants have moved to dismiss under Rule 12(b)(3) and, in the alternative,

to compel arbitration under Indiana law and stay the case. We conclude that under Rule

12(g), Defendants have waived their argument under Indiana law as to their Rule 12(b)(3)

argument—the purpose of Rule 12(g) is to prevent Defendants from being able to file a

motion to dismiss on one ground (improper venue under the FAA), lose on this ground,

and then file another motion to dismiss on another ground (improper venue under Indiana arbitration law). *See Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012) ("The policy behind Rule 12(g) is to prevent piecemeal litigation in which a defendant moves to dismiss on one ground, loses, then files a second motion on another ground."). However, Rule 12(g) has no impact on Defendants' ability to renew its motion to compel arbitration and stay the case under Indiana law. Accordingly, we deny Defendants' motion insofar as it seeks dismissal under Rule 12(b)(3) but will nonetheless proceed to consider whether Defendants have successfully moved to compel Ms. Rodgers-Rouzier to arbitrate her claims and stay the case under Indiana law.

## B.  UNTIMELY MOTION TO RECONSIDER

Ms. Rodgers-Rouzier also argues that Defendants are essentially asking for a reconsideration of our order denying their second Motion to Dismiss, and a "motion to reconsider 'is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion.'" Docket No. 156, at 3 (quoting *Duvall v. Burkett*, 2022 WL 123807, at *1 (S.D. Ind. Jan. 13, 2022) (Barker, J.)). In *Duvall*, however, we were considering a litigant's motion to reconsider that "mostly rehashe[d] her attempts to exhaust her administrative remedies and present[ed] arguments the Court previously rejected." 2022 WL 123807 at *3. In denying that motion, we explained that "[a] motion to reconsider is not an avenue to present old arguments that were rejected in the first instance." *Id.* (citing *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269−70 (7th Cir. 1996)).

15

Ms. Rodgers-Rouzier, however, has not pointed the Court to any authority supporting her contention that Defendants' Renewed Motion should be construed as a motion to reconsider, nor any authority to support the proposition that Defendants are prohibited from renewing a motion to compel arbitration after correcting earlier deficiencies.

The Fourth Circuit considered renewed motions to compel arbitration and stay further proceedings in which defendants had corrected deficiencies identified in the district court's initial denial of the motions to compel arbitration and stay the proceedings. *Dillon v. BMO Harris Bank, N.A.*, 787 F.3d 707, 715 (4th Cir. 2015). The plaintiff urged the district court to construe these renewed motions as motions for reconsideration and deny them because the court had already "fully and finally decided" the arbitration issues in the initial motions. *Id.* at 711. The district court agreed, noting that it had previously denied the motions to compel arbitration, and observed that the defendants had "offered no legal basis to revisit this previously decided issue." *Id.* at 712. The Fourth Circuit, however, reversed the district court's decision not to consider the renewed motions on the merits, explaining that "no authority—not the FAA, the Federal Rules of Civil Procedure, or any other source of law of which we are aware—limits a party to only one motion" to compel arbitration. *Id.* at 715. *See also Mason v. Midland Funding LLC*, 2021 WL 3017990, at *4 n.5 (N.D. Ga. Mar. 23, 2021) ("This Court rejects Plaintiff's argument that the Renewed Motions to Compel Arbitration may not be considered. First, there is no federal procedural rule prohibiting the filing of renewed motions, and [the prior order] did not specifically indicate that the previous motions were being dismissed with prejudice.

Additionally, courts in the Eleventh Circuit have considered these renewed motions to compel arbitration in similar circumstances."). The Fourth Circuit concluded that "because the Renewed Motions presented different issues than did the Initial Motions, the district court could not have relied on the law of the case doctrine to deny the Renewed Motions." *Dillon*, 787 F.3d at 715. Courts in our circuit likewise take up renewed motions to compel arbitration on the merits, without construing them as motions for reconsideration, where the renewed motions correct earlier deficiencies or raise new grounds for compelling arbitration. *See Saxon*, 2023 WL 2456382.

We reject Ms. Rodgers-Rouzier's argument here for the same reason: she has identified no federal procedural rule, nor any Indiana authority to support her contention that Defendants are prohibited from filing a renewed motion to dismiss. Our prior order not only was entered without prejudice, but we stated explicitly that we had refrained from ruling on whether the Arbitration Agreement was enforceable under Indiana law because it had not been properly briefed at that time. Moreover, we have identified Indiana precedent that explicitly contemplates motions to compel arbitration being properly renewed. In *Whitesell Precision Components, Inc. v. Autoform Tool & Mfg., LLC*, the Indiana Court of Appeals concluded that "genuine issues of material fact remain on the threshold issue of which party's terms and conditions apply to the parties' relationship, and therefore we agree with the trial court that [the moving party] has not, at this procedural juncture, met its burden of proving the existence of an enforceable contract between the parties calling for arbitration." 2019 WL 2588359, at *5 (Ind. Ct.

17

A17

App. 2019). "Obviously," as the Court of Appeals explained, the moving party "may renew its arbitration motion upon resolution of the foregoing contract issues." *Id.* at *5 n.5. In sum, we find no legitimate reason to construe Defendants' Renewed Motion as a motion to reconsider, nor any convincing reason why we should not address this Renewed Motion and its new basis for compelling arbitration.

## C.  WAIVER OF ARBITRATION ARGUMENT

Ms. Rodgers-Rouzier includes a more general waiver argument, as well, arguing that Defendants have waived their contractual right to insist on arbitration because of their lack of diligence in seeking arbitration. Ms. Rodgers-Rouzier relies on two cases—*Morgan v. Sundance, Inc.*, 142 S.Ct. 1708 (2022) and *Breedlove v. Santander Consumer USA, Inc.*, 2021 WL 3879070 (S.D. Ind. Aug. 26, 2021)—both involving waiver standards under the FAA. Given that the question presented here focuses on Indiana law, we shall conduct our review of the issue of waiver under Indiana law. *Saxon*, 2023 WL 2456382, at *3 (citing *Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021)). But even if we were to rely on the cases involving waiver under the FAA, both are readily distinguishable from the case at bar. Under Indiana law, a contractual right to arbitration may, indeed, be waived. *Fin. Center Credit Union v. Rivera*, 178 N.E.3d 1245, 1251 (Ind. Ct. App. 2021) (citing *Welty Bldg. Co. v. Indy Fedreau Co., LLC*, 985 N.E.2d 792, 798 (Ind. Ct. App. 2013)). As Indiana courts have explained:

> In determining if waiver has occurred, courts look at a variety of factors, including the timing of the arbitration request, if dispositive motions have been filed, and/or if a litigant is unfairly manipulating the judicial system by

18

attempting to obtain a second bite at the apple due to an unfavorable ruling in another forum.

*Id.* (quoting *Finlay Props., Inc. v. Hooiser Contracting, LLC*, 802 N.E.2d 453, 455−56 (Ind. Ct. App. 2003)); *see also JKL Components Corp. v. Insul-Reps, Inc.*, 596 N.E.2d 945 (Ind. Ct. App. 1992), *trans. denied*; *Aetna Cas. & Sur. Co. v. Dalson*, 421 N.E.2d 691 (Ind. Ct. App. 1981); *Shahan v. Brinegar*, 390 N.E.2d 1036 (Ind. 1979)). Moreover, "we must resolve any doubts here regarding waiver of the right to arbitration *against* finding such a waiver." *Rivera*, 178 N.E.3d at 1251 (emphasis added) (quoting *Welty Bldg. Co.*, 985 N.E.2d at 802−03).

The Defendants' conduct under review here is vastly different from that described in cases in which courts have found waiver. For example, in *Tamko Roofing Products, Inc. v. Dilloway*, the Indiana Court of appeals found waiver when a party waited until after the opposing party had presented all his evidence at trial to move for the first time to compel arbitration. 865 N.E.2d 1074, 1079 (Ind. Ct. App. 2007). In *Rivera*, the Indiana Court of Appeals found a defendant had waived its contractual right to arbitration after the defendant had answered the complaint and filed for summary judgment. *Id.* at 1252. The Court in *Rivera* relied, in part, on the Seventh Circuit's decision in *St. Mary's Medical Center, Inc. v. Disco Aluminum Products Co.*, in which the panel found waiver where the party requesting arbitration waited ten months after the commencement of lawsuit to request arbitration and did not request arbitration until after the party had lost on its motion for summary judgment. 969 F.2d 585 (7th Cir. 1992). Conversely, in *Stardust Ventures, LLC v. Roberts*, the Indiana Court of Appeals found no waiver when a party's

first substantive pleading was a motion to dismiss and to compel arbitration. 65 N.E.3d

1122, 1129 (Ind. Ct. App. 2016). There, the Court found "there [was] no indication [that

the party was] unfairly manipulating the judicial system" like the plaintiffs in *Aetna*

*Casualty & Surety Co. v. Dalson*, who had consistently resisted arbitration and only when

an unfavorable judgment was entered against them at trial did they seek to compel

arbitration, or the parties in *Shahan v. Brinegar*, who formally requested the trial court to

order arbitration only after the trial court had already construed the underlying agreement

and made its award. *Id.* (citing 421 N.E.2d 691, 692–93 (Ind. Ct. App. 1981); 390 N.E.2d

1036, 1041 (Ind. 1979)); *see also Neal v. Purdue Fed. Credit Union*, 201 N.E.3d 253,

260−61 (Ind. Ct. App. 2022).

   In the case at bar, we come quickly to the conclusion that Defendants have not waived

their contractual right to arbitrate. *See also Bradley v. Menard, Inc.*, 2017 WL 8780318,

at *5 (S.D. Ind. Dec. 15, 2017) (quoting *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d

720, 726 (7th Cir. 2004) ("Unlike where a party files a motion for summary judgment, 'it

is well-established that a party does not waive its right to arbitrate merely by filing a

motion to dismiss.'")). Defendants have sought to enforce their right to arbitrate at every

turn in this litigation—they raised it in each of their three motions to dismiss, they

included it as an affirmative defense in their answer to the Amended Complaint, they

raised the issue in the Case Management Plan, and have raised it in their objection to Ms.

Rodgers-Rouzier's Motion for Step One Notice under the FSLA. Even if we had doubts

about Defendants' waiver, Indiana law requires us to "resolve any doubts here regarding

waiver of the right to arbitration *against* finding such a waiver." *Rivera*, 178 N.E.3d at

1251 (emphasis added) (quoting *Welty Bldg. Co.*, 985 N.E.2d at 802−03). Having

concluded that Defendants have not waived their contractual right to arbitrate under

Indiana law, we turn finally to the merits of Defendants' claim to consider whether the

Arbitration Agreement is enforceable under the Indiana Uniform Arbitration Act, Ind.

Code § 34-57-2-1, *et seq.*

### D. ENFORCEABILITY UNDER INDIANA LAW

"It is well settled that Indiana recognizes a strong policy favoring enforcement of

arbitration agreements." *Est. of King by Briggs v. Aperion Care*, 155 N.E.3d 1193, 1194

(Ind. Ct. App. 2020) (quoting *Sanford v. Castleton Health Care Ctr.*, LLC, 813 N.E.2d

411, 416 (Ind. Ct. App. 2004)). "Nevertheless, arbitration is a matter of contract, and a

party cannot be required to submit to arbitration unless the party has agreed to do so."

*Reitenour v. M/I Homes of Ind., L.P.*, 176 N.E.3d 505, 510 (Ind. Ct. App. 2021) (quoting

*Homes by Pate, Inc. v. DeHaan*, 713 N.E.2d 303, 306 (Ind. Ct. App. 1999)). In Indiana, a

party "seeking to compel arbitration must satisfy a two-pronged burden of proof." *Safety*

*Nat. Cas. Co. v. Cinergy Corp.*, 829 N.E.2d 986, 1000 (Ind. Ct. App. 2005) (citing

*Mislenkov v. Accurate Metal Detinning, Inc.*, 743 N.E.2d 286, 289 (Ind. Ct. App. 2001).

"First, the party must demonstrate the existence of an enforceable agreement to arbitrate

the dispute." *Id.* (citing *Mislenkov*, 743 N.E.2d at 289). "Second, the party must prove

that the disputed matter is the type of claim that the parties agreed to arbitrate." *Id.* (citing

*Mislenkov*, 743 N.E.2d at 289). "Once satisfied that the parties contracted to submit their

disputes to arbitration, the court is required by [Indiana Uniform Arbitration Act] to compel arbitration.'" *Rivera*, 178 N.E.3d at 1250 (citing *Est. of King*, 155 N.E.3d at 1195); *see also* Ind. Code § 34-57-2-3(a).

Under Indiana law, a contract requires an "offer, acceptance of the offer and consideration." *Reitenour*, 176 N.E.3d at 511 (quoting *Straub v. B.M.T. by Todd*, 645 N.E.2d 597, 598 (Ind. 1994)). "If these elements are present, the parties are generally bound by the terms of the agreement." *Id.* (quoting *Straub*, 645 N.E.2d at 598). "Indiana has long recognized the freedom of parties to enter into contracts." *Doe v. Carmel Operator, LLC*, 160 N.E.3d 518, 521 (Ind. 2021) (citing *Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1129 (Ind. 1995)). "Indeed, we presume that they represent the freely bargained agreement of parties." *Id.* (citing *Fresh Cut*, 650 N.E.2d at 1129). Indiana courts "will thus enforce contracts, so long as they aren't illegal or against public policy." *Id.* (citing *Fresh Cut*, 650 N.E.2d at 1130).

"These basic principles govern arbitration agreements." *Id.* at 522 (citing *MPACT Constr. Grp., LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 906 (Ind. 2004)). "So, when two parties enter into a contract that includes an arbitration clause, courts will presume the parties made the agreement willingly." *Id.* (citing *MPACT Constr. Grp*, 802 N.E.2d at 906). Further, "when construing arbitration agreements [under Indiana law], every doubt is to be resolved in favor of arbitration." *Rivera*, 178 N.E.3d at 1250 (quoting *Est. of King*, 155 N.E.3d at 1194). "And, unless something in the arbitration clause is illegal or contravenes public policy, a court will enforce it so long as

the dispute is covered within the broader contract." *Doe*, 160 N.E.3d 522 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006); *Brumley v. Commonwealth Bus. Coll. Educ. Corp.*, 945 N.E.2d 770, 777 (Ind. Ct. App. 2011)). With these legal principles in mind, we turn now to address the parties' respective arguments.

Ms. Rodgers-Rouzier maintains that the Arbitration Agreement is unenforceable under Indiana law because it specifically provides that: "This Agreement and the applicability/construction of any arbitration decision shall be governed by the Federal Arbitration Act."[5] Docket No. 97, at 3. Thus, she contends, Indiana law cannot fill in the gaps when federal law is unenforceable. In response, Defendants cite our prior order, in which we expressly stated that the "exemption of Ms. Rodgers-Rouzier as an exempted 'seaman' under the FAA *does not* preclude a determination that state law may require Ms. Rodgers-Rouzier and other similarly situated employees to individually arbitrate their claims pursuant to the parties' common arbitration agreements." Docket No. 138, at 3 (emphasis added). In issuing this ruling, we relied on the authority handed down by the Seventh Circuit's decision in *Sherwood v. Marquette Transportation Co., LLC*, in which the panel held that "provisions for alternative dispute resolution may be enforced as contracts under state law, even if the provisions are outside the Federal Arbitration Act's

---

[5] We reiterate that the provision also states: "The provisions of this Agreement shall be severable. If any portion of this Agreement is held to be invalid or unenforceable, it shall not affect the remaining portions of this Agreement. This Agreement may be modified by a court or an arbitrator to render it enforceable." Docket No. 97, at 3.

scope." 587 F.3d at 843 (citing *Omni Tech Corp. v. MPC Sol. Sales, LLC*, 432 F.3d 797

(7th Cir. 2005); *Hall Street Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008)).

"[T]he fact that the Federal Arbitration Act doesn't apply only means that its

enforcement mechanisms aren't available, not that the whole dispute can't be arbitrated by

enforcing the contract through another vehicle (like state law)." *Atwood*, 2016 WL

2766656 at *3). "This is true 'even when the contract says that the Federal Arbitration Act

applies and mentions no other law—if the federal act doesn't apply, the agreement to

arbitrate remains viable, and the only question becomes what state's law applies to the

contract to arbitrate.'" Docket No. 138, at 4 (quoting *id.*). Our prior order—and the

relevant precedent upon which we relied—squarely rejects the argument advanced by

Ms. Rodgers-Rouzier. *See Land v. Int'l Bus. Machines Corp.*, 108 F. Supp. 3d 632, 640

(S.D. Ind. 2015) ("The doctrine of law of the case is a rule of practice under which … a

decision on an issue of law made at one stage of the case becomes binding precedent to

be followed in successive stages of the same litigation.") (internal quotation marks and

citation omitted). "Because statutory exemption questions relate 'to the Court's ability to

employ the federal statute, and not to the underlying arbitration agreement's validity,' we

next look to the applicable state law to determine whether the parties' arbitration

agreements are valid." *Id.* (quoting *Atwood*, 2016 WL 2766656 at *1). Here, despite the

dispute between the parties over whether state or federal law governs the arbitration

agreements at issue, they have not contested that, if state law governs, Indiana law should

24

apply to the extent that federal law is inapplicable. *Id.* at 4 n.3. We agree that Indiana law applies here. *Id.*

Ms. Rodgers-Rouzier does not dispute that she executed the Arbitration Agreement, or that any of the three essential elements of a valid contract—offer, acceptance of the offer and consideration—was lacking. She also does not dispute that if held to be enforceable, her claims are of the type covered by the Arbitration Agreement. Instead, she argues that the two of the Arbitration Agreement's provisions should be deemed unenforceable and, because these defects cannot be severed, the entire Agreement is unenforceable. In advancing this contention, she fails to take into account the Arbitration Agreement's severability provision as well as well-established precedent under Indiana law that holds that when a contract contains an unenforceable provision which can be eliminated without frustrating the contract's basic purpose, courts will enforce the remainder of the contract. *See Hemingway v. Scott*, 66 N.E.3d 998, 1004 (Ind. Ct. App. 2016) (citing *Lee v. State*, 816 N.E.2d 35, 39 (Ind. 2004)).

Nonetheless, Ms. Rodgers-Rouzier challenges Paragraph 2 of the Arbitration Agreement, which provides that "[t]he arbitration shall be conducted under the rules and procedures of the American Arbitration Association, Judicial Arbitration and Mediation Services or another arbitration service selected by the Company." Docket No. 76-1, Ex. 1. She maintains that "[t]his clause provides Defendants with complete and unfettered discretion to select which arbitral forum applies and which rules govern within that forum." Docket No. 81, at 12. As support for this argument, Ms. Rodgers-Rouzier relies

entirely on our decision in *Geiger v. Ryan's Fam. Steak Houses, Inc.*, describing that
decision as identical to the situation here. 134 F.Supp.2d 985 (S.D. Ind. 2001) (Barker,
J.).

In *Geiger*, however, we were considering an arbitration agreement in which the
plaintiff's employer had contracted exclusively with one company—Employment Dispute
Services, Inc. ("EDSI")—for the provision of arbitration services. We agreed with the
rulings of other courts that there was a strong potential for bias in EDSI's selection of the
arbitration panel, given the company's financial interest in maintaining the arbitration
service contracts with employers and, "coupled with the burdensome fees structure, [we
concluded] that a plaintiff could well be prevented from pursuing her statutory claim in
the arbitration forum." *Id.* at 997. These were not, however, the only reasons we
concluded that the arbitration agreement could not require either of the two plaintiffs to
submit to arbitration; we also determined that we were well-advised to set aside the
arbitration agreement as an " unconscionable contract based on its contents, its potential
for bias in the arbitral forum, the disparate bargaining power of the parties, and the
plaintiffs' lack of understanding of the terms of the agreement." *Id.* There, plaintiffs had
satisfied the steep climb to establish unconscionability, which is when it is "such that no
sensible man not under delusion, duress, or in distress would make [it], and such as no
honest and fair man would accept [it]." *Id.* (quoting *Weaver v. Am. Oil Co.*, 276 N.E.2d
144, 146 (Ind. 1971)). Our decision in *Geiger* obviously involved vastly different

circumstances than those presented here, making it almost entirely irrelevant in resolving the situation we are faced with here.

What is instructive, in contrast, are authorities from the Indiana Court of Appeals and the Indiana Uniform Arbitration Act. In *Geneva-Roth, Capital, Inc. v. Edwards*, the Indiana Supreme Court considered, as a matter of first impression, the question of whether an arbitration agreement fails due to impossibility, if the chosen forum cannot serve as arbitrator, or whether the trial court is obliged to appoint a substitute arbitrator in such case pursuant to Section 5 of the FAA. 956 N.E.2d 1195, 1199 (Ind. Ct. App. 2011). There, the forum-selection clause provided: "any claim, dispute, or controversy . . . shall be resolved by binding arbitration by and under the Code of Procedures of the National Arbitration Forum (NAF) at the time the claim is filed." *Id.* at 1202−03. "The agreement further provided that rules and forms could be obtained from NAF and that all claims shall be filed at any NAF office." *Id.* The Indiana Court of Appeals concluded that, "[a]t a minimum, for the selection of an arbitrator to be 'integral,' the arbitration clause must include an express statement designating a specific arbitrator." *Id.* at 1202. "An express designation of a single arbitration provider weighs in favor of a finding that the designated provider is integral to the agreement to arbitrate." *Id.* Because "NAF as the arbitral forum was integral to the arbitration agreement, and given that the NAF is no longer available to conduct consumer arbitrations, the arbitration provision [was found to be] null and void on grounds of impossibility." *Id.* at 1203; *see also Apex 1 Processing, Inc. v. Edwards*, 962 N.E.2d 663, 667 (Ind. Ct. App. 2012) (same).

Conversely, in *Anonymous, M.D. v. Hendricks*, the Indiana Court of Appeals evaluated an NAF forum-selection clause that "contain[ed] language that [was] conspicuously absent from the agreements in *Geneva–Roth* and *Apex 1*." 994 N.E.2d 324, 330 (Ind. Ct. App. 2013). "Namely, after reciting that NAF was the preferred entity to conduct any arbitration, the agreement goes on to state: 'If the National Arbitration Forum is unwilling or unable to serve or the parties mutually agree not to utilize the National Arbitration Forum for whatever reason, then the parties shall mutually agree on some other Alternative Dispute Resolution Service or method to administer the binding arbitration proceeding.'" *Id.* This sentence "emphatically indicates that the NAF is not integral to the agreement to arbitrate." *Id.* (citation omitted). "In sum," the Court of Appeals found "no reason not to give effect to the plain language of the parties' arbitration agreement, providing for an alternate forum and/or method of arbitration in the event of NAF's unavailability." *Id.* at 331.

In the case at bar, the Arbitration Agreement provides that the arbitration be conducted by the American Arbitration Association, the Judicial Arbitration and Mediation Services, or another arbitration services conducted by the company. Applying Indiana precedent, we conclude that this forum-selection clause is not integral to the Arbitration Agreement because it provides for multiple alternatives. *See also* Ind. Code § 34-57-2-4 ("If the arbitration agreement provides a method of appointment of arbitrators, this method shall be followed."). Because the forum-selection clause is not integral to the Arbitration Agreement, the Indiana Uniform Arbitration Act can be used as a mechanism

to appoint a substitute arbitrator in the event of unavailability or potential bias. *Geneva-Roth,* 956 N.E.2d at 1203. Specifically, the Indiana Uniform Arbitration Act provides that "[i]f the method of appointment of arbitrators is not specified in the agreement and can not be agreed upon by the parties, or if agreed method fails or for any reason can not be followed, or if an arbitrator appointed fails or is unable to act and a successor has not been appointed within a reasonable time, the court on application of a party shall appoint one (1) or more arbitrators, who have all the powers of an arbitrator appointed according to the agreement." *Id.* Moreover, Indiana Code section 34-57-2-3(g) provides:

> On application the court may stay an arbitration proceeding on a showing that the method of appointment of arbitrators is likely to or has resulted in the appointment of a majority of arbitrators who are partial or biased in some relevant respect. The court shall then appoint one (1) or more arbitrators as provided in [Indiana Code section 34-57-2-4].

Thus, Ms. Rodgers-Rouzier's argument to the contrary is wholly unpersuasive and we reject it accordingly.

Ms. Rodgers-Rouzier's final challenge to the Arbitration Agreement focuses on Paragraph 4, which sets out her agreement "not to commence any claim hereunder more than six (6) months after the date I knew or should have known of the facts giving rise to the claim, and I agree to waive any statute of limitations to the contrary." Docket No. 76-1, Ex. 1. She interprets Paragraph 4 to impose a one-sided limitation on her claims, with no corresponding limitation on Defendants'. This argument fails to take into account Paragraph 5, however, which expressly incorporates the terms contained in Paragraph 4 and applies them to Defendants' potential claims against Ms. Rodgers-Rouzier.

29

A29

Moreover, "[i]t is clear under Indiana law that 'the doctrine of mutuality of obligation does not require that every duty within an agreement be based upon a corresponding obligation.'" *BRC Rubber & Plastics, Inc. v. Cont. Carbon Co.*, 900 F.3d 529, 538 (7th Cir. 2018) (quoting *Terre Haute Reg'l Hosp. v. El-Issa*, 470 N.E.2d 1371, 1377 (Ind. Ct. App. 1984); *see also Conner v. Instant Cash Adv.,* 2003 WL 446197, at *4 (S.D. Ind. Feb. 20, 2003) (Barker, J.). "Certainly a contract does not become unenforceable merely because the obligations of the parties differ in quality or quantity." *Terre Haute Reg'l Hosp.*, 470 N.E.2d at 1377.

Ms. Rodgers-Rouzier maintains that Paragraph 4 is, in any event, an unenforceable time limitation on her claims, while acknowledging that "[o]utside of the FLSA context, the general rule is that 'contractual limitations shortening the time to commence suit are valid, at least so long as a reasonable time is afforded.'" Docket No. 81, at 14 (quoting *Johnson v. W. & S. Life Co.*, 2014 WL 4370772, at *5 (S.D. Ind. Sept. 3, 2014) (Barker, J.)). "While courts will uphold limitations on other employment claims such as Title VII, courts strike down such limitations when applied to FLSA claims." *Id.* (citing *Johnson*, 2014 WL 4370772, at *5). Ms. Rodgers-Rouzier has provided no persuasive authority for her contention that such time limitations are categorically prohibited with respect to FSLA claims. Our decision in *Johnson v. Western & Southern Life Co.* certainly offers no such support. In *Johnson*, we explained that "Indiana law generally holds that 'contractual limitations shortening the time to commence suit are valid, at least so long as a reasonable time is afforded.'" 2014 WL 4370772, at *5. "Courts assessing six-month

limitations periods for claims similar to those brought by [the plaintiff] have found the period to be reasonable." *Id.* (citing *Taylor v. W. and S. Life Ins. Co.*, 966 F.2d 1188, 1206 (7th Cir. 1992)). Thus, we held that the six-month limitations period contained in the employment agreement at issue was reasonable and served as a bar to plaintiff in bringing her Title VII claims. *Id.*

The other authorities Ms. Rodgers-Rouzier relies upon are no more instructive in analyzing the provisions currently before us. In *Castellanos v. Raymours Furniture Co., Inc.*, a New York district court concluded that an arbitration agreement's six-month limitation on the plaintiff's FSLA claim was unenforceable. 291 F.Supp.3d 294, 298−302 (E.D.N.Y. 2018). However, the district court was operating under the requirements of the FAA, under which courts are mandated to "enforce arbitration agreements according to their terms holds true for claims that allege a violation of a federal statute, unless [it] has been overridden by a contrary congressional command in the at-issue federal statute." *Id.* (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (internal quotation marks omitted)). "Additionally, federal courts have developed a 'judge-made exception' to the FAA's mandate, which 'allow[s] courts to invalidate agreements that prevent the effective vindication of a federal statutory right.'" *Id.* (quoting *Sutherland v. Ernst & Young*, 726 F.3d 290, 298 (2d Cir. 2013). The Supreme Court has "clarified that the effective vindication exception applies only where an agreement operates as a 'prospective waiver of a party's right to pursue statutory remedies.'" *Id.* (quoting *Italian*

*Colors*, 570 U.S. at 236)). The *Castellanos* court found the time limitation was unenforceable based on these particular aspects of the FAA.

Ms. Rodgers-Rouzier successfully argued in her prior filings with the court that she cannot be compelled to arbitrate under the FAA. To attempt to rely on the substantive protections offered under the Act at this juncture is both unavailing and unbecoming. Ms. Rodgers-Rouzier has not identified, nor has the Court been able to find, any authority under Indiana law for her assertion that arbitration agreements cannot limit the time period within which to bring claims under the FSLA. Accordingly, we reject her theory, invoking again the operative principle that, "when construing arbitration agreements [under Indiana law], every doubt is to be resolved in favor of arbitration." *Rivera*, 178 N.E.3d at 1250 (quoting *Est. of King*, 155 N.E.3d at 1194).

Our review of the facts and relevant law allows us to conclude that the parties reached an agreement as reflected in their contract to submit their dispute to arbitration. We are therefore "required by statute to compel arbitration." *Destination Yachts*, 113 N.E.3d at 653 (Ind. Ct. App. 2018) (quoting *Capitol Const. Servs*, 946 N.E.2d at 628 (Ind. Ct. App. 2011)); *see also* Ind. Code § 34-57-2-3(a). That said, the Indiana Uniform Arbitration Act "does not specify the proper disposition of the litigation upon such a determination." *Destination Yachts*, 113 N.E.3d at 653 (quoting *Ind. CPA Society, Inc. v. GoMembers, Inc.*, 777 N.E.2d 747, 750 (Ind. Ct. App. 2002)). Indiana courts have routinely held that "[a] stay, rather than a dismissal, is perhaps favorable where certain claims remain that are not subject to arbitration, but dismissal is proper where all issues raised must be

submitted to arbitration." *Pekin Ins. Co. v. Hanquier*, 984 N.E.2d 227, 231 (Ind. Ct. App.

2013) (quoting *Koors v. Steffen*, 916 N.E.2d 212, 218 (Ind. Ct. App. 2009)). Accordingly,

because the entirety of Ms. Rodgers-Rouzier's lawsuit must be submitted to arbitration

under the parties' Arbitration Agreement, we shall dismiss this lawsuit without prejudice.

We acknowledge that in excess of one hundred Putative Collective Members have at

this time already opted-in to this lawsuit. However, because the Collective Action has

never been certified, indeed, notice has never issued, these individuals are not actually

party-plaintiffs to this litigation. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66,

75 ("Under the FLSA, by contrast, 'conditional certification' does not produce a class

with an independent legal status, or join additional parties to the action."); *Beery v. Quest

Diagnostics, Inc.*, 2013 WL 3441792, at *3 (D.N.J. Jul. 8, 2013) ("The four individuals

who filed consents-to-join without conditional certification or court ordered notice are

not party-plaintiffs"); Cooper v. Terminix Int'l Co., 2018 WL 1998973, at *6 (S.D. Tex.

Apr. 11, 2018) ("The court has not granted conditional certification of a collective action

in this case. The only named plaintiff is Cooper. While other individuals have filed form

consent forms to opt-in to a collective action, there is not currently any collective action

to join. The court agrees with the court in *Beery* that those who filed consent-to-join

forms are not yet parties to this case. . . . Therefore, having recommended dismissal of

the claims of the only named plaintiff in this case, the court also recommends dismissal

of all claims of individuals who have filed consent form"); *Alvarez v. City of Chi.*, 605

F.3d 445, 450 (7th Cir. 2010) (explaining that "when a collective action is decertified, it

reverts to one or more individual actions on behalf of the named plaintiffs"); *Espenscheid v. Direct Sat USA, LLC* 688 F.3d 872, 877 (7th Cir. 2012) (explain that upon decertification of an FSLA collective action, "the unnamed class members go poof and the named plaintiffs' claims revert to being individual claims."). Ms. Rodgers-Rouzier thus remains the only plaintiff in this litigation; nothing, of course, prevents other, potential collective members from suing/arbitrating in their own right.

## IV.   CONCLUSION

Accordingly, Defendants' Motion to Dismiss or, in the Alternative, to Stay Litigation Pending Individual Arbitration [Docket No. 151] is **DENIED IN PART** and **GRANTED IN PART**. Plaintiff is hereby **COMPELLED** to arbitrate her entire dispute pursuant to the parties' Arbitration Agreement. All pending motions [Docket No. 144; Docket No. 148; Docket No. 155] are **DISMISSED AS MOOT**. Pursuant to Indiana law, we **DISMISS** this action without prejudice. Final judgment shall issue accordingly.

IT IS SO ORDERED.

Date:   _____3/31/2023_____          _Sarah Evans Barker_____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

34

A34

Distribution:

Sarah Arendt
WERMAN SALAS P.C.
sarendt@flsalaw.com

Augustus S. Herbert
Gray Ice Higdon, PLLC
aherbert@grayice.com

Robert P. Herre
rpherre@aol.com

Bobby R. Miller, Jr.
MILLER HAHN, PLLC
bmiller@millerlaw-firm.com

Dennis D. Murrell
Gray Ice Higdon, PLLC
dmurrell@grayice.com

Loren T. Prizant
MIDDLETON REUTLINGER
lprizant@middletonlaw.com

Maureen A. Salas
WERMAN SALAS P.C.
msalas@flsalaw.com

Michael Tresnowski
WERMAN SALAS P.C.
mtresnowski@flsalaw.com

Douglas M. Werman
WERMAN SALAS PC
dwerman@flsalaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

MARY RODGERS-ROUZIER on behalf of )
herself and all others similarly situated, )
                         )
           Plaintiff, )
                         )
           v. )      No. 4:20-cv-00004-SEB-KMB
                         )
AMERICAN QUEEN STEAMBOAT )
OPERATING COMPANY, LLC, )
HMS GLOBAL MARITIME LLC, )
                         )
           Defendants. )

**FINAL JUDGMENT**

      Having this day directed that final judgment be entered against Plaintiff, the Court

now enters final judgment in favor of Defendants. This action is **DISMISSED**

**WITHOUT PREJUDICE**.

      IT IS SO ORDERED.

Date:       3/31/2023                                 

                                              SARAH EVANS BARKER, JUDGE
                                              United States District Court
                                              Southern District of Indiana

Distribution:

Sarah Arendt
WERMAN SALAS P.C.
sarendt@flsalaw.com

Augustus S. Herbert
Gray Ice Higdon, PLLC
aherbert@grayice.com

Robert P. Herre
rpherre@aol.com

Bobby R. Miller, Jr.
MILLER HAHN, PLLC
bmiller@millerlaw-firm.com

Dennis D. Murrell
Gray Ice Higdon, PLLC
dmurrell@grayice.com

Loren T. Prizant
MIDDLETON REUTLINGER
lprizant@middletonlaw.com

Maureen A. Salas
WERMAN SALAS P.C.
msalas@flsalaw.com

Michael Tresnowski
WERMAN SALAS P.C.
mtresnowski@flsalaw.com

Douglas M. Werman
WERMAN SALAS PC
dwerman@flsalaw.com